John E. Bloomquist
James E. Brown
DONEY CROWLEY PAYNE BLOOMQUIST P.C.
P.O. Box 1185
44 West 6th Avenue
Helena, MT 59601
Phone: (406) 443-2211
Fax: (406) 449-8443
Email:      jbloomquist@doneylaw.com
            jbrown@doneylaw.com
*Local Attorney for All Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **Doug Lair**; **Steve Dogiakos**; **American Tradition Partnership**; **American Tradition Partnership PAC**; **Montana Right to Life Association PAC**; **Sweet Grass Council for Community Integrity**; **Lake County Republican Central Committee**; **Beaverhead County Republican Central Committee**; **Jake Oil LLC**; **JL Oil LLC**; **Champion Painting Inc.**; and **John Milanovich**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **David B. Gallik**, in his official capacity as Commissioner of Political Practices; **Steve Bullock**, in his official capacity as Attorney General of the State of Montana; and **Leo Gallagher**, in his official capacity as Lewis and Clark County Attorney, <br><br> *Defendants*. | Case No. _____ <br><br> **Verified Complaint For Declaratory and Injunctive Relief** |

Plaintiffs Doug Lair ("Lair"), Steve Dogiakos ("Dogiakos"), American Tradition Partnership ("ATP"), American Tradition Partnership PAC ("ATP-PAC"), Montana Right to Life Association PAC ("MRTLA PAC"), Sweet Grass Council for Community Integrity ("SGCCI"), Lake County Republican Central Committee ("Lake County Republican"), Beaverhead County Republican Central Committee ("Beaverhead County Republican"), Jake Oil LLC ("Jake Oil"), JL Oil LLC ("JL Oil"), Champion Painting Inc. ("Champion Painting"), and John Milanovich ("Milanovich") (collectively "Plaintiffs") complain against Defendants as follows:

## Introduction

1.      This is a civil action for declaratory and injunctive relief arising under the First and Fourteenth Amendments to the Constitution of the United States.  It concerns the constitutionality of certain Montana election laws as codified in Chapters 35 and 37, Mont. Code Ann.  Specifically, Plaintiffs challenge the constitutionality of:

- Mont. Code Ann. § 13-37-216(1), (3), and (5), which limit contributions individuals and political committees may make to candidates;

- Mont. Code Ann. §§ 13-37-216(3) and (5), which limit contributions from political parties to their candidates and imposes an aggregate limit on the contributions more than one political party may make to candidates;

- Mont. Code Ann. §§ 13-35-227, which bans corporate general-fund contributions to candidates and also bans corporate general-fund contributions to committees making independent expenditures;

- Mont. Code Ann. §§ 13-35-225(3)(a), which imposes disclaimer requirements on political speech (the "Disclaimer Requirement"); and

- Mont. Code Ann. §§ 13-37-131, which bans political statements about candidates' voting records that the State judges to be false.

6.   Those who violate, or attempt to violate, any of the challenged provisions are guilty of a misdemeanor, Mont. Code Ann. §§ 13-35-103, 13-35-104, and are subject to prosecution, Mont. Code Ann. § 13-37-124.  If convicted, they are subject to fines, Mont. Code Ann. § 13-37-128.

7.   Plaintiffs complain that these provisions burden and chill their speech and association; and that they are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because they fail applicable constitutional scrutiny.

**Jurisdiction and Venue**

8.   Because this case arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution of the United States, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).  It also has jurisdiction pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202.

9.     Venue is proper under 28 U.S.C. § 1391(b) because events giving rise to the claim occurred and Defendants reside in this District.

## Parties

10.    Lair and Dogiakos (collectively "Individual Contributors") both want to make contributions above Montana's contribution limits to candidates for various Montana elected offices.  They would do so but for Montana's statutory prohibitions and penalties.

11.    ATP is a non-stock, non-profit corporation organized under the laws of the State of Colorado.  It is registered to do business in Montana.  Its Montana address is in Bozeman.

12.    ATP PAC is a registered Montana political committee.

13.    MRTLA PAC is a registered Montana political committee.

14.    SGCCI is an unincorporated association whose members are concerned about the explosive growth of government and its negative effect on their lives and livelihoods.

15.    Lake County Republican is the local Republican Party for Lake County, Montana.

16.    Beaverhead County Republican is the local Republican Party for Beaverhead County, Montana.

17.    Jake Oil is a for-profit corporation organized under the laws of the

State of Montana.  Its principle place of business is in Billings, Montana.  It is not publicly traded.

18.     JL Oil is a for-profit corporation organized under the laws of the State of Montana.  Its principle place of business is in Billings, Montana.  It is not publicly traded.

19.     Champion Painting is a for-profit corporation organized under the laws of the State of Montana.  Its principle place of business is in Bozeman, Montana.  It is not publicly traded.

20.     Milanovich is a Montana resident, and a businessman who has run for Montana House in the past and intends to run again in 2012.

21.     As Commissioner of Political Practices, Defendant David Gallik ("Commissioner") has authority to investigate violations of, enforce the provisions of, and hire attorneys to prosecute violations of Mont. Code Ann. Chapters 35 and 37 and the rules adopted to carry out these provisions.  Mont. Code Ann. §§ 13-37-111, 13-37-113, 13-37-114, and 13-37-124.  The Commissioner acts under color of law and is sued in his official capacity.

22.     As Montana Attorney General, Defendant Steve Bullock ("Attorney General") has power to investigate and prosecute violations of Mont. Code Ann. Chapters 35 and 37 by and through the county attorneys under his supervision. Mont. Code Ann. §§ 2-15-501(5), 13-37-124, 13-37-125, and 13-37-128.  The

Attorney General acts under color of law and is sued in his official capacity.

23.     As Lewis and Clark County Attorney, Defendant Leo Gallagher

("County Attorney") has power to investigate and prosecute violations of Mont.

Code Ann. Chapters 35 and 37.  *See,* Mont. Code Ann. §§ 7-4-2716, 13-37-124,

13-37-125, 13-37-128 (granting investigative and prosecutorial power to the state

county attorneys).  The County Attorney acts under color of law and is sued in his

official capacity.

<b>Facts</b>

24.     Chapters 35 and 37, Mont. Code Ann., impose certain contribution

limits and bans on individual, political committee, political party, and corporate

contributors.

**A.     Facts About the Law**

25.     Mont. Code Ann. § 13-37-216(1)[1] and (3)[2] limit contributions

---

[1]**Mont. Code Ann. § 13-37-216(1)** provides in pertinent part:

> (1)(a) Subject to adjustment as provided for in subsection (4),
> aggregate contributions for each election in a campaign by a political
> committee or by an individual, other than the candidate, to a candidate
> are limited as follows:
> (i) for candidates filed jointly for the office of governor and lieutenant
> governor, not to exceed $500;
> (ii) for a candidate to be elected for state office in a statewide election,
> other than the candidates for governor and lieutenant governor, not to
> exceed $250;
> (iii) for a candidate for any other public office, not to exceed $130.
> (1)(b) A contribution to a candidate includes contributions made to the

individuals and political action committees ("PACs") may make to candidates.

The contribution limits are to be adjusted for inflation. Mont. Code Ann. § 13-37-216(4). Currently, the law imposes a per-election limit of $600 on contributions

from individuals and political committees to candidates for Governor and

Lieutenant Governor.[3] It imposes a per-election limit of $300 for contributions

from individuals and political committees to candidates for other statewide offices,

including Attorney General, Secretary of State, State Auditor, Superintendent of

Public Instruction, Supreme Court Justice, and Clerk of the Supreme Court.[4] And it

imposes a per-election limit of $160 for contributions from individuals and

political committees to candidates for other public offices, including candidates for

---

candidate's committee and to any political committee organized on the candidate's behalf.

Mont. Code Ann. § 13-37-216.

[2]**Mont. Code Ann. § 13-37-216(3)** provides in pertinent part:

All political committees except those of political party organizations are subject to the provisions of subsections (1) and (2).

Mont. Code Ann. § 13-37-216(3).

[3]Commissioner of Political Practices, *Political Campaign Contribution Limits Summary*, *available at* http://politicalpractices.mt.gov/content/5campaign-finance/2010ContributionLimits (last visited May 3, 2011) (attached as **Exhibit 1**). Upon information and belief, these limits are the current ones.

[4]*Id.*

Verified Complaint For Declaratory and Injunctive Relief                    7

Montana Senate, House, and District Judge.[5]

26.     Mont. Code Ann. § 13-37-216(5) limits the amount of contributions candidates may accept from individuals and PACs to no more than those allowed under Chapter 37, statutory contribution limits.[6]

27.     Mont. Code Ann. § 13-37-216(3) limits contributions from political parties to their candidates by imposing an aggregate limit on the contributions all political parties may make to any candidate.[7] These limits are adjusted for

---

[5]*Id.*

[6]**Mont. Code Ann. §§ 13-37-216(5)** provides that "[a] candidate may not accept any contributions, including in-kind contributions, in excess of the limits in this section."

[7]**Mont. Code Ann. §§ 13-37-216(3)** provides in pertinent part:

> All political committees except those of political party organizations are subject to the provisions of subsections (1) and (2). For purposes of this subsection, "political party organization" means any political organization that was represented on the official ballot at the most recent gubernatorial election. Political party organizations may form political committees that are subject to the following aggregate limitations, adjusted as provided for in subsection (4), from all political party committees:
> (a) for candidates filed jointly for the offices of governor and lieutenant governor, not to exceed $18,000;
> (b) for a candidate to be elected for state office in a statewide election, other than the candidates for governor and lieutenant governor, not to exceed $6,500;
> (c) for a candidate for public service commissioner, not to exceed $2,600;
> (d) for a candidate for the state senate, not to exceed $1,050;
> (e) for a candidate for any other public office, not to exceed $650.

inflation.  Mont. Code Ann. § 13-37-216(4).  Currently, the law imposes a per-election aggregate limit of $21,600 for contributions from all political parties to any candidate for Governor or Lieutenant Governor.[8]  It imposes a per-election aggregate limit of $7,800 for contributions from all political parties to any candidate for other statewide offices, including Attorney General, Secretary of State, State Auditor, Superintendent of Public Instruction, Supreme Court Justice, and Clerk of the Supreme Court.[9]  And it imposes per election aggregate limits of $3,100 for contributions from all political parties to any candidate for the Public Service Commission, $1,250 for contributions from all political parties to any candidate for Montana Senate, and $800 for contributions from all political parties to any candidate for Montana House. [10]

28.     Mont. Code Ann. § 13-37-216(5) limits the amount of contributions candidates may accept from political parties to no more than those allowed under Chapter 37, statutory contribution limits.[11]

---

Mont. Code Ann. § 13-35-216(3).

[8]Ex. 1, *Political Campaign Contribution Limits Summary*.

[9]*Id.*

[10]*Id.*

[11]**Mont. Code Ann. § 13-37-216(5)** provides that "[a] candidate may not accept any contributions, including in-kind contributions, in excess of the limits in this section."

Verified Complaint For Declaratory and Injunctive Relief                    9

29.     Under these aggregate limits, Lake County Republican and Beaverhead County Republican may not both make an $800 contribution to the same candidate for the Montana House.  Rather, if the Lake County Republican has already made an $800 contribution, the Beaverhead County Republican is prohibited from making any contribution, unless the candidate first refunds the contribution (or a part of it) that he/she received from the Lake County Republican. This is because, under the aggregate contribution limit imposed by Mont. Code Ann. §§ 13-37-216(3) and (5), the sum total contribution from all political parties together that a candidate for Montana House may accept is $800.  The aggregate limit on political party contributions thus functions as a ban prohibiting political parties from making any contributions to candidates once those candidates have accepted the maximum allowable contribution from another political party or parties.

30.     Mont. Code Ann. § 13-35-227 bans corporate general-fund contributions to candidates and committees making independent expenditures.[12]  It also bans candidates and committees accepting general-fund corporate

---

[12]**Mont. Code Ann. § 13-35-227(1)** provides that "[a] corporation may not make a contribution or an expenditure in connection with a candidate or a political committee that supports or opposes a candidate or a political party."  Mont. Code Ann. § 13-35-227(1).

contributions.[13]

31.    Mont. Code Ann. § 13-35-225 prescribes certain disclaimers for "all communications that advocat[e] the success or defeat of a candidate, political party, or ballot issue."

32.    Mont. Code Ann. § 13-35-225 (3)(a) requires that all "printed election material that includes information about a candidate's voting record must also include a reference to the particular vote or votes upon which the information is based; a disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time; and a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true." *Id.*

33.    "Printed election material" is defined to include "[a]ll communications advocating the success or defeat of a candidate, political party, or ballot issue through any broadcasting station, newspaper, magazine, outdoor advertising facility, direct mailing, poster, handbill, bumper sticker, internet website, or other form of general political advertising[.]" Mont. Code Ann. § 13-35-225(1).

34.    Neither the Montana Code Annotated nor the Administrative Rules of

---

[13]**Mont. Code Ann. § 13-25-227(2)** provides that "[a] person, candidate, or political committee may not accept or receive a corporate contribution described in subsection (1)." Mont. Code Ann. § 13-35-227(2).

Montana define the phrase "advocating the success or defeat of a candidate."

35.     Nor do the Montana Code Annotated or the Administrative Rules of Montana limit the phrase "advocating the success or defeat of a candidate" to that type of communication the Supreme Court has defined as "express advocacy" in *Buckley v. Valeo*, 424 U.S. 1, 44, 44 n. 52 (1976).  In fact, the Commissioner has rejected the rule of *Buckley*, that express advocacy must be limited to "communications containing express words of advocacy of election or defeat, such as "vote for," "elect," "support," "cast your ballot for," "Smith for Congress," "vote against," "defeat," "reject."  *See, id*. at 44 n. 52.  Instead, the Commissioner states that communications may be "the functional equivalent of express advocacy" when "the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *In the Matter of the Complaint Against Western Tradition Partnership and the Coalition for Energy and the Environment* (Dec. of Commr.) at 34 (attached as **Exhibit 2**).

36.     Because "advocating the success or defeat of a candidate" it is not limited to *Buckley* "communications containing words of express advocacy," the phrase may reach even "issue advocacy;" that is it may impermissibly reach, "speech about public issues more generally," which speech merely 'mentions a candidate.' *FEC v. Wis. Right to Life*, 551 U.S. 449, 456 (2007) ("*WRTL-II*").

37.     Mont. Code Ann. § 13-37-131(1) provides that "[i]t is unlawful for a

person to misrepresent a candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false." Mont. Code Ann. § 13-37-131(2), meanwhile, provides that "[i]t is unlawful for a person to misrepresent to a candidate another candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false." (Mont. Code Ann. §§ 13-37-131(1), (2) (collectively "False Statement Law")).

38.    Those accused of violating or attempting to violate any of the challenged provisions are subject to prosecution by the State's agents. Mont. Code Ann. § 13-37-124.[14] If convicted of violating or attempting to violate any of the

---

[14]**Mont. Code Ann. §§ 13-37-124** provides that:

> (1) Except as provided in 13-35-240, whenever the commissioner determines that there appears to be sufficient evidence to justify a civil or criminal prosecution under chapter 35 of this title or this chapter, the commissioner shall notify the county attorney of the county in which the alleged violation occurred and shall arrange to transmit to the county attorney all information relevant to the alleged violation. If the county attorney fails to initiate the appropriate civil or criminal action within 30 days after receiving notification of the alleged violation, the commissioner may then initiate the appropriate legal action.

Mont. Code Ann. § 13-37-124(1).

challenged provisions they are guilty of a misdemeanor, Mont. Code Ann. §§ 13-35-103,[15] 13-35-104,[16] and are subject to fines, Mont. Code Ann. §§ 13-37-128.[17]

## B.   Facts About the Plaintiffs and Their Intended Activities

39.   Lair is a Big Timber area rancher and investor.

40.   Dogiakos is a small businessman who owns a company offering web design services.

41.   Both Lair and Dogiakos have previously made contributions to

---

[15]**Mont. Code Ann. § 13-35-103** provides that "[a] person who knowingly violates a provision of the election laws of this state for which no other penalty is specified is guilty of a misdemeanor."

[16]**Mont. Code Ann. § 13-35-104** provides that "[a]n attempt, as defined in 45-4-103, to violate a provision of the election laws of this state is itself a violation of the election laws and is punishable as provided in 45-4-103."

[17]**MCA Section 13-35-128** provides:

(1) A person who intentionally or negligently violates any of the reporting provisions of this chapter, a provision of 13-35-225, or a provision of Title 13, chapter 35, part 4, is liable in a civil action brought by the commissioner or a county attorney pursuant to the provisions outlined in 13-37-124 and 13-37-125 for an amount up to $500 or three times the amount of the unlawful contributions or expenditures, whichever is greater.

(2) A person who makes or receives a contribution or expenditure in violation of 13-35-227, 13-35-228, or this chapter or who violates 13-35-226 is liable in a civil action brought by the commissioner or a county attorney pursuant to the provisions outlined in 13-37-124 and 13-37-125 for an amount up to $500 or three times the amount of the unlawful contribution or expenditure, whichever is greater.

Mont. Code Ann. § 13-35-128.

candidates running for office in Montana.

42.     The Individual Contributors intend to make contributions to candidates running for office in 2012.

43.     Lair plans to contribute to Republican candidates for Governor, Attorney General, Montana House, and Montana Senate.  He plans to contribute the maximum amount allowed by law to each of these candidates.  Specific planned contributions include (but are not limited to) a planned $160 contribution to Ed Walker, 2012 candidate for Montana Senate District 29; a $160 contribution to Dan Kennedy, 2012 candidate for Montana House District 57; a $600 contribution to Ken Miller, 2012 candidate for Governor; and a $600 contribution to Jeff Essmann, if he decides to run for Governor in 2012.

44.     Dogiakos plans to contribute to the Republican candidate for governor and to the Republican candidate for Attorney General.  Dogiakos also intends to make contributions to Republican candidates for Montana House and Senate. Dogiakos plans to contribute the maximum amount allowed by law to each of these candidates.  Specific planned contributions include (but are not limited to) a planned $160 contribution to Christy Clark, 2012 candidate for Montana House District 17; and a planned $160 contribution to Bob Lake, 2012 candidate for Montana Senate District 44.

45.     In addition to their planned contributions, the Individual Contributors

also want to make contributions to each of their chosen candidates that are greater than the contribution limits imposed by Mont. Code Ann. §§ 13-37-216(1), (3), and (5).  They would each like to contribute at least $750 to their chosen candidates for Montana House and Senate, and at least $1,000 to their chosen candidates for Attorney General and Governor.  They are ready, willing, and able to make these contributions and would do so, but for the limits imposed by Mont. Code Ann. §§ 13-37-216(1), (3), and (5), and the penalties imposed on those who violate the limits.

46.    ATP is an association of citizens that has chosen to incorporate in the State of Colorado as a non-stock, non-profit corporation.  It is registered to do business in Montana.  Its Montana address is in Bozeman.

47.    ATP's mission is to fight environmental extremism and promote responsible development and management of land, water, and natural resources in the Rocky Mountain West and across the United States.  It is committed to advancing a voluntary, free-market approach to partnering with the business community to promote beneficial environmental stewardship.  ATP seeks to achieve its goals through hard-hitting issue advocacy including legislative lobbying, direct citizen lobbying, electioneering, grassroots mobilization, and public education campaigns.

48.    In its legislative lobbying activities, ATP takes positions on political

issues and expresses its opinion of proposed legislation that concerns issues important to ATP.

49.    In its direct citizen lobbying activities, ATP seeks to inform the public about new and pending legislation and its ramifications.  It therefore takes positions on political issues and expresses its carefully researched and well-reasoned opinions of both legislation and also elected officials and their votes on matters important to ATP.

50.    ATP is exempt from federal income taxes as a social welfare organization under 26 U.S.C. § 501(c)(4).  Organizations under 501(c)(4) must be "primarily engaged in promoting in some way the common good and general welfare of the people of the community." (26 C.F.R. § 501(c)(4)-1.) Further, "[t]he promotion of social welfare does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office." (*Id.*)  So, while 501(c)(4) organizations may engage in some unambiguously campaign related speech, their major purpose can never be the nomination or election of candidates.  ATP is in compliance with this requirement, and will remain so in the future.

51.    ATP wants to produce printed issue advocacy communications prior to the 2012 general election that will educate the public concerning incumbents' votes on various bills that either were, or were not, consistent with ATP's

philosophy of responsible development and management of land, water, and natural resources.  As part of its citizen lobbying, ATP intends to take positions on political issues and publish its carefully researched and well-reasoned opinions concerning elected officials and their votes, as well as the meaning and implication of their votes, in printed communications.  It plans to issue its printed issue advocacy communications prior to 60 days before a general election and 30 days before a primary (the "60/30 day window").  It also may issue its printed issue advocacy communications within the 60/30 day window.

52.     MRTLA PAC is a registered PAC under Montana law.  It is the "connected PAC"[18] of Right to Life of Montana, an association of Montana citizens that has chosen to incorporate in the State of Montana.  Right to Life of Montana is the official state affiliate of the National Right to Life Committee.  It believes that life is our first "inalienable right."  It seeks to educate Montanans regarding the pro-life position by engaging in direct citizen-lobbying.  It also engages in legislative lobbying as it seeks to effect legislation furthering the pro-life cause.  Part of the way it fulfills this mission is through its connected PAC, MRTLA PAC.

---

[18]In the federal regime, a "connected organization" is a corporation, union, etc. that forms a PAC. The PAC is described as a "connected PAC" to distinguish it from all those that are "nonconnected." *See* 11 CFR 100.6. The plaintiffs utilize these terms to describe the various corporations and PACs involved in this lawsuit.

53.     MRTLA PAC engages in political speech and association in the 2012 election cycle by supporting and opposing candidates with express advocacy ads (that is, ads that call on the electorate to vote for or against specific candidates) that mention candidates' voting records.

54.     MRTLA PAC also engages in legislative and direct citizen lobbying. It seeks to inform legislators and the public about new and pending legislation and its ramifications.  It therefore takes positions on political issues and expresses its carefully researched and well-reasoned opinions of both legislation and also elected officials and their votes.  MRTLA PAC does this through its issue advocacy mailings and radio spots in which it publishes its carefully researched and well-reasoned opinions of elected officials and their votes on matters important to Right to Life Montana.

55.     MRTLA PAC designed and paid for mailings and radio spots in the last election cycle and plans to do so again in the 2012 election cycle.  It wants to produce printed express advocacy and issue advocacy communications that will mention candidates for election in Montana in 2012 and their votes on various issues that are important to MRTLA PAC.

56.     MRTLA PAC's specific planned examples of express advocacy that mention voting records include printed ads criticizing current Montana Senators Larry Jent and David Wanzenried, both of whom are running for the Democratic

nomination for governor in 2012.  MRTLA PAC wants to draw attention to the fact

that both Senators Jent and Wanzenried voted against the "parental notification"

and 'unborn victims' bills, and urge the electorate to vote against them for

governor.

57.    MRTLA PAC's specific planned example of issue advocacy that

mention voting records is an ad in local newspapers listing all the candidates that it

considers to be "pro-life" and thanking them for their votes on legislation that is

crucial to the pro-life cause.  MRTLA PAC plans to issue its printed issue advo-

cacy communications prior to the 60/30 day window.  It also may issue printed

issue advocacy communications within the 60/30 day window.

58.    MRTLA PAC wants to accept unlimited contributions, from all

sources (including corporations) for its independent expenditures.  But Mont. Code

Ann. § 13-25-227(2) provides that "[a] . . .  political committee may not accept or

receive a corporate contribution."  MRTLA PAC would accept unlimited

contributions from all sources, including corporations, for its independent expen-

ditures and issue advocacy but for the law and the penalties it imposes.

59.    If allowed to receive corporate contributions for its independent

expenditures, MRTLA PAC will segregate the corporate funds to ensure that they

are only used to fund independent expenditures and are not used to fund candidate

contributions in Montana.  MRTLA PAC will do this, so long as Montana law bans

corporate contributions to candidates.

60.     SGCCI is a nonpartisan, unincorporated association made up of citizens who are concerned about the expansive growth of government.  It has no board or elected officers, but acts through an unelected council.  It is not registered with the state of Montana, and has not filed as a political committee with the Commissioner of Political Practices.

61.     SGCCI wants to educate the public about the need to reestablish and protect their constitutional rights and interests.  It seeks to do this by advocating for rational and limited local government whose entire purpose is to insure the liberty, safety and independence of those consenting to be governed.  SGCCI supports clear, limited and sound laws and ordinances, based on the Constitution of the United States and the Declaration of Independence.  Among the activities SGCCI conducts are:  (1) hosting public meetings where issues of interest can be discussed; (2) organizing issue education campaigns; (3) communicating with other interested groups and with its members; (4) participating and testifying at meetings held by public bodies, such as the Montana legislature; and (5) operating its blog, *available at* blog at www.sweetgrassroots.org, which seeks to inform the public about issues that are important to the SGCCI.

62.     SGCCI seeks to promote its mission and to educate the public by researching and gathering facts on public policy matters and reporting those facts

to the public at large.  In this role, it acts as a citizen-lobbyist by taking positions on political issues and expressing its carefully researched and well-reasoned opinions of both legislation and also elected officials and their votes on matters important to SGCCI.

63.    SGCCI does not engage in electioneering, and does not send out express advocacy communications.  SGCCI does not endorse candidates or parties and does not contribute to candidates for political office.  Rather, SGCCI attempts to confine its political speech to genuine issue advocacy.

64.    In 2010, Lair and Bob Faw, two of the men who would become founding members of the SGCCI, sent a letter to Sweet Grass County residents that mentioned Representative John Esp, a Republican representing Montana House District 61.  (SGCCI had not yet officially formed, but Lair and Mr. Faw and others were working loosely together as a group).  In the letter, Lair and Mr. Faw criticized Mr. Esp for mischaracterizing his then-primary opponent's religion.  Mr. Esp responded by threatening to file a complaint against Lair and Mr. Faw with the Commissioner.  Mr. Esp's specific accusation was that these individuals were violating the law for not registering as a political committee.  These threats continued over a period of about six months.

65.    As a result of this incident, Lair, Mr. Faw, and the other members of SGCCI are now very aware that they and their association can be accused (and

potentially convicted) of violating Montana law for simply speaking out about

political issues.  SGCCI is concerned that the Commissioner's office can be used

by people who disagree with a speaker's message as a forum for political pay back,

state-sanctioned harassment, and as forum for applying unconstitutional laws and

regulations to regulate the constitutionally-protected free speech and association

activities of every day Montanans.  It is particularly concerned that the Disclaimer

Requirement and the False Statement Law might be used to harass it and its

members if it continues to speak about candidates and their voting records, or

otherwise discusses issues that might be judged as relevant to the issues of the

campaign.

66.    ATP, MRTLA PAC, and SGCCI  reasonably believe that their printed

communications may be judged as "advocating for the success or defeat of a

candidate," and so would be subject to the disclaimer requirements prescribed by

Mont. Code Ann. § 13-35-225.  Also, when ATP, MRTLA PAC, and SGCCI take

positions on political issues and discuss candidates and their voting records, they

publish their carefully researched and well-reasoned opinions of the meaning and

impact of the votes in question.  Because they offer opinion on political issues,

they recognize that others may disagree with their assessment.  They therefore

reasonably believe that their communications could be judged to be a

misrepresentation of a candidate's public voting record, or some other matter that

is relevant to the issues of the campaign, and so may subject them to investigation and civil action brought by the Commissioner or County Attorney, as provided for by Mont. Code Ann. § 13-37-131(4).

67.     ATP and MRTLA PAC object to the requirements and prohibitions of these laws, but plan to continue publishing their opinions.

68.     SGCCI would like to continue taking positions on candidates and their voting records and publishing those opinions in written letters and other communications.  However, it will no longer publish communications, written or otherwise, criticizing candidates or their voting record or commenting on anything else that it believes might be judged to be "relevant to the issues of a campaign" so long as the Disclaimer Requirement and False Statement Law remains in effect. SGCCI does not want to take the risk that its communications will be judged to run afoul of the Disclaimer Requirement or the False Statement Law, nor subject itself and its members to the possible penalties that can be imposed by the law.  SGCCI would continue to publish its carefully researched and well-reasoned opinions on candidates and their voting records but for the Disclaimer Requirement and the False Statement Law and the penalties imposed by each.

69.     ATP PAC is the connected PAC for ATP.  It is a registered PAC under the laws of the State of Montana.

70.     ATP PAC wants to make both contributions to candidates and also

independent expenditures in support of candidates for election in 2012.

71.     Among other activities, ATP PAC plans to make independent expenditures advocating the election or defeat of candidates in the 2012 election cycle.  ATP PAC wants to accept unlimited contributions, from all sources (including corporations) for its independent expenditures.  But Mont. Code Ann. § 13-25-227(2) provides that "[a] . . .  political committee may not accept or receive a corporate contribution."  ATP PAC would accept unlimited contributions from all sources, including corporations, for its independent expenditures but for the law and the penalties it imposes.

72.     If allowed to receive corporate contributions for its independent expenditures, ATP PAC will segregate the corporate funds to ensure that they are only used to fund independent expenditures and are not used to fund candidate contributions in Montana.  ATP PAC will do this, so long as Montana law bans corporate contributions to candidates.

73.     ATP PAC also plans to make direct contributions to candidates for Governor, Secretary of State, Montana Senate, and Montana House.  ATP PAC will contribute to each of its chosen candidates up to the amount allowed by law. Specific planned contributions include (but are not limited to) a $600 contribution to Rick Hill, candidate for Governor in 2012; a $600 contribution to Ken Miller, also a candidate for Governor in 2012; a $300 contribution to Scott Aspenlieder,

candidate for Secretary of State in 2012; a $160 contribution to Ryan Osmundson, candidate for Montana House District 29 in 2012; a $160 contribution to Cary Smith, candidate for Montana House District 57 in 2012; a $160 contribution to Jim Keane, candidate for Montana Senate District 38 in 2012; and a $160 contribution to John Brenden, candidate for Montana Senate District 18 in 2012.

74.    In addition, ATP PAC wants to make contributions to each of its chosen candidates that are greater than the contribution limits imposed by Mont. Code Ann. § 13-37-216(1), (3), and (5).  It would like to contribute at least $1,500 to its chosen candidates.  It is ready, willing, and able to make these contributions and would do so, but for the limits imposed by Mont. Code Ann. §§ 13-37-216(1), (3), and (5), and the penalties imposed on those who violate the limits.

75.    JL Oil and Jake Oil are both Montana corporations that engage in oil and gas exploration and development.  Champion Painting is a non-stock corporation that has served Montana for over 30 years as a painting contractor.  JL Oil, Jake Oil, and Champion Painting (collectively "Corporations") wish to exercise their First Amendment rights to engage in political speech and association.

76.    None of the Corporations is a non-profit advocacy corporation; thus, none qualifies as an "MCFL-type Corporation" under *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238 (1986) ("*MCFL*").  Each is a for-profit corporation,

Verified Complaint For Declaratory and Injunctive Relief                        26

organized to provide services to Montanans and make money for their owners.

77.     None of the Corporations is publicly traded.

78.     The Corporations want to support candidates for state offices in 2012 by making general-fund, direct contributions to candidates up to the amount allowed by Montana's contribution limits for individuals.

79.     Examples of specific, planned contributions for JL Oil include (but are not limited to) a $600 contribution to Ken Miller, candidate for Governor, and a $160 contribution to Cary Smith, candidate for Montana House District 55.  In addition to these contributions, JL Oil wants to make other contributions to other candidates as it determines which candidates support a conservative, pro-business agenda that would be beneficial to its business.

80.     Examples of specific, planned contributions for Jake Oil include (but are not limited to) a $300 contribution to Kevin Olsen (or another conservative candidate who may decide to run) for Secretary of State; a $300 contribution to Marv McCann (or another conservative candidate) for Attorney General; a $300 contribution to Kyle Olsen (or another conservative candidate who may decide to run) for State Auditor; a $300 contribution to Nels Swandel (or another conservative candidate who may decide to run) for State Supreme Court Judge; a $160 contribution to Ed Walker, candidate for Montana Senate District 29; and a $160 contribution to Dan Kennedy, candidate for Montana House District 57.  In

addition to these contributions, Jake Oil wants to make other contributions to other candidates as it determines which candidates support a conservative, pro-business agenda that would be beneficial to its business.

81.     Examples of specific, planned contributions for Champion Painting, include (but are not limited to) a $160 contributions to Rep. Mike More, who will stand for re-election for House District 70; a $160 contribution to Rep. Tom Burnett, who will stand for re-election for House District 63; and a $600 contribution to Ken Miller, who will run for Governor in 2012.

82.     In addition to making direct contributions to candidates, the Corporations want to make direct, general-fund contributions to committees that make independent expenditures in support of, or opposition to, candidates.  Each of the Corporations would make contributions earmarked for independent expenditures to ATP PAC, but are prohibited from doing so by the law.  Also, Champion Painting would make additional contributions earmarked for independent expenditures to MRTLA PAC, but is prohibited from doing so by law.

83.     Each of the Corporations is ready, willing, and able to make their contributions and would do so but for Montana's law.  The Corporations would make these planned contributions as well as other contributions they may decide to make, but for the ban imposed by Montana's law and the penalties imposed on those who violate the ban.

84.    Lake County Republican is the local Republican Party for Lake County, Montana.  It has a history of making contributions to Republican candidates, including in the last election.

85.    Lake County Republican plans to make contributions to candidates in the 2012 election.  Specific planned contributions include (but are not limited to) a contribution to Joe Reed, who will be running for election in House District 15, and a contribution to whichever Republican runs for election in Senate District 6. They plan to contribute up to the limits allowed by law.  Lake County Republican wants to be allowed to make its planned contributions, even if other political parties also make contributions to their chosen candidates.  If other political parties contribute to their chosen candidates, Lake County Republican would make its planned contributions, but for the aggregate limits imposed by Mont. Code Ann. §§ 13-37-216(3) and (5), and the penalties imposed on those who violate them.

86.    Lake County Republican wants to make contributions of $2,000 to each of their chosen candidates.  Montana's law, however, limits its contributions to $800 to Montana House candidates and $1,250 to Montana Senate candidates. Lake County Republican would make their $2,000 contribution to Mr. Reed for his campaign in House District 15, along with a $2,000 contribution to whichever Republican runs for election in Senate District 6, but for the limits imposed by Mont. Code Ann. §§ 13-37-216(3) and (5), and the penalties imposed on those who

Verified Complaint For Declaratory and Injunctive Relief                                    29

violate them.

87.     Beaverhead County Republican is the local Republican Party for Beaverhead County.  It has a history of making contributions to Republican candidates, including in the last election.

88.     Beaverhead County Republican plans to make contributions to candidates in the 2012 election.  Specific planned contributions include (but are not limited to) a contribution to Joe Reed, who will be running for election in House District 15, a contribution to Debby Barrett, who will be running for re-election in Senate District 36, and a contribution to the Republican candidate for Montana governor.  It plans to contribute up to the limits allowed by law.  Beaverhead County Republican wants to be allowed to make its planned contributions, even if other political parties also make contributions to their chosen candidates.  If other political parties contribute to its chosen candidates, Beaverhead County Republican would still make its planned contributions, but for the aggregate limits imposed by Mont. Code Ann. §§ 13-37-216(3) and (5), and the penalties imposed on those who violate them.

89.     Beaverhead County Republican has first-hand experience with the deleterious effect the aggregate limits have on political speech and association.  It attempted to make contributions to several candidates for Montana House and Senate during the 2010 election cycle.  Because of the aggregate party contribution

limits, five of those candidates were forced to return Beaverhead County Republican's contributions.  Consequently, Beaverhead County Republican was not allowed to make even the symbolic expression of support that a minimal contribution might allow.  *See, Buckley*, 424 U.S. at 21.  Nor was it allowed to associate itself with its candidates of choice by making a contribution to them. *See, id*. at 22.  As a result, Beaverhead County Republican had its speech and association rights violated as a result of the aggregate limits.  *See,* **Ex. 3** (containing notes from candidates accompanying returned contributions to Beaverhead County Republican).

90.     Beaverhead County Republican wants to make contributions of $2,000 to each of its chosen candidates.  Montana's law, however, limits its contributions to $800 to House candidates and $1,250 to Senate candidates. Beaverhead County Republican would make their $2,000 contribution to Mr. Reed for his campaign in House District 15, along with a $2,000 contribution to Debby Barrett, who will be running for re-election in Senate District 36, but for the limits imposed by Mont. Code Ann. §§ 13-37-216(3) and (5), and the penalties imposed on those who violate them.

91.     Lake County Republican and the Beaverhead County Republican are separate and autonomous county central committees for the Republican Party.  Not only are they autonomous from each other and every other county Republican

Party, they are autonomous from the Montana Republican Party.  Lake County

Republican has different members and officers than Beaverhead County

Republican.  They each make their own decisions about which candidates they will

support.  One does not control the other, and while they are free to discuss their

plans with one another they generally do not.

92.     Milanovich resides in Bozeman, Montana, and is the Founder and

President of RightPSI, Inc, which manufactures tire pressure indicators that screw

on to any tire stem so the owners will always know if their tires are filled correctly.

93.     Milanovich ran unsuccessfully for Montana House in 2008.  He

appeared on the ballot for the Republican primary in 2010, but decided to endorse

one of his primary opponents in that race.

94.     Milanovich again intends to run for Montana House District 69 in

2012.  He will run on the Republican ticket.

95.     Milanovich has filed his 'Statement of Candidate' Form C-1 with the

Commissioner.  Form C-1 must be filed within five days after a candidate for

office receives or spends money, appoints a campaign treasurer, or files for office,

whichever occurs first.  The statutory authority for Form C-1 is contained in Mont.

Code Ann. § 13-37-201, 13-37-202, and 13-37-205.  Because Milanovich has filed

his Form C-1, he is presently allowed to solicit and accept contributions for his

campaign.  Milanovich is currently doing so.

96.     Milanovich wants to solicit and accept contributions above the $160 contribution limit.  He would do so but for the law and its penalties.

97.     Milanovich wants to solicit and accept contributions from the Montana Republican Party above the $800 contribution limit.  He also wants to solicit and accept contributions from various county Republican parties above the $800 contribution limit.  He would do so but for the law and its penalties.

98.     Milanovich further does not want to be restricted in his soliciting and accepting of contributions by Montana's aggregate limits, which say that once he has accepted $800 in contributions from a political party or parties he may not solicit or accept any additional contributions from a political party or parties.  Milanovich would solicit and accept contributions from multiple parties in amounts that would cause his aggregate contribution from all political parties to rise above $800, but for the law and its penalties.

99.     Milanovich has a conservative, pro-business philosophy.  He believes that he would be able to attract contributions from business corporations if the law allowed.  Milanovich wants to solicit and accept contributions from corporations.  He would do so but for the ban on corporation contributions to candidates and the penalties imposed on those who violate the ban.

100.   It is Milanovich's opinion as an experienced candidate that Montana's contribution limits and bans challenged in this lawsuit prevent challengers from

raising the funds they need to mount effective campaigns against incumbent officeholders.

101.   Each of the Plaintiffs plan to engage in substantially similar future activity.

102.   Plaintiffs have no adequate remedy at law.

**Count I**
**Mont. Code Ann. §§ 13-37-216(1), (3), and (5) Limits on Contributions from Individuals to Candidates Are Unconstitutional.**

103.   Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

104.   Mont. Code Ann. §§ 13-37-216(1), (3), and (5) together prohibit individuals from making, and candidates from soliciting or accepting, contributions above certain limits.  Currently, the per-election limits are:

- $600 for contributions to candidates for Governor and Lieutenant Governor;

- $300 for contributions to candidates for Attorney General, Secretary of State, State Auditor, Superintendent of Public Instruction, Supreme Court Justice, and Clerk of the Supreme Court; and

- $160 for contributions to candidates for Montana Senate, House, and District Judge.

107.   Contribution limits implicate fundamental First Amendment freedoms

of political speech and political association. *Randall v. Sorrell*, 548 U.S. 230, 246 (2006). Thus, contributions are political speech as well as political association. *Id.* Laws that burden political speech are subject to strict scrutiny. *Citizens United v. Fed. Election Commn.*, 130 S. Ct. 876, 898 (2010). Mont. Code Ann. §§ 13-37-216(1), (3), and (5) individual limits burden and chill Plaintiffs' political speech and association. They are unconstitutional because they fail the required strict scrutiny review.

108.   Even if the limits are subject to "closely drawn" scrutiny, they are "too low" and "too strict" to survive and so are unconstitutional. *Randall*, 548 U.S. at 248 and 262.

## Count II
## Mont. Code Ann. §§ 13-37-216(1), (3), and (5) Limits on Contributions from PACs to Candidates Are Unconstitutional.

109.   Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

110.   Mont. Code Ann. §§ 13-37-216(1), (3), and (5) together prohibit PACs from making, and candidates from soliciting or accepting, contributions above certain limits. Currently, the per-election limits are the same as the limits for individual contributors described in Count I.

111.   Mont. Code Ann. § 13-37-216(1), (3), and (5) PAC limits burden and chill the Plaintiffs' political speech and association. They are unconstitutional

Verified Complaint For Declaratory and Injunctive Relief                    35

because they fail the required strict scrutiny review.  *See, Citizens United*, 130 S.

Ct. at 898 (holding that laws that burden political speech are subject to strict

scrutiny).

112.   Even if the limits are subject to "closely drawn" scrutiny, they are

"too low" and "too strict" to survive and so are unconstitutional.  *Randall*, 548

U.S. at 248 and 262.

## Count III
## Mont. Code Ann. §§ 13-37-216(3) and (5) Aggregate Limits On Contributions From Political Parties To Their Candidates Are Unconstitutional.

113.   Plaintiffs reallege and incorporate by reference all of the allegations

contained in all of the preceding paragraphs.

114.   Political parties occupy a unique place in the American Republic.

They exist to allow citizens to band together to elect candidates.  *Randall*, 548 U.S.

at 258; *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000).  They must be

allowed to make contributions that are sufficiently robust to ensure that the right to

political association within political parties and the special role of the political

party in American society is not threatened.  *Randall*, 548 U.S. at 256-59.

115.   Mont. Code Ann. § 13-37-216(3) limits contributions from political

parties to their candidates by imposing an aggregate limit on the contributions all

political parties may make to any candidate.  Currently, the per-election political

party aggregate contribution limits are:

Verified Complaint For Declaratory and Injunctive Relief                                        36

- $21,600 for contributions to any candidate for Governor or Lieutenant Governor.

- $7,800 for contributions to any candidate for other statewide offices, including Attorney General, Secretary of State, State Auditor, Superintendent of Public Instruction, Supreme Court Justice, and Clerk of the Supreme Court.

- $3,100 for contributions to any candidate for the Public Service Commission;

- $1,250 for contributions to any candidate for Montana Senate; and

- $800 for contributions to any candidate for Montana House.

116.   The political party aggregate contribution limits burden and chill First Amendment political speech and association freedoms without constitutional justification.  They are not sufficiently robust to avoid impermissibly 'reduc[ing] the voice of political parties . . . to a whisper.'  *Randall*, 548 U.S. at 259.  And their constitutional deficiency is magnified because they are an aggregate limit on contributions from *all* political parties, thereby further reducing the contribution any one political party can make to a candidate.

117.   Mont. Code Ann. § 13-37-216(3) political party aggregate contribution limits burden and chill Plaintiffs' political speech and association. They are unconstitutional because they fail the required strict scrutiny review.  *See,*

*Citizens United*, 130 S. Ct. at 898 (holding that laws that burden political speech are subject to strict scrutiny).

118.   Even if the aggregate limits are subject to "closely drawn" scrutiny, they are "too low" and "too strict" to survive and so are unconstitutional.  *Randall*, 548 U.S. at 248 and 262.

### Count IV
### Mont. Code Ann. § 13-35-227 Ban On Corporate General-fund Contributions To Candidates is Unconstitutional.

119.   Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

120.    Mont. Code Ann. § 13-35-227 bans corporate general-fund contributions to candidates.  It also bans candidates accepting general-fund corporate contributions.

121.   The only constitutionally cognizable interest in restricting political speech and association is the interest in preventing quid pro quo corruption or its appearance.  *Citizens United*, 130 S. Ct. at 901-12.  There is no corruption-danger inherent in the corporate form, *id*. at 903-08, and the government may not restrict First Amendment freedoms simply because an association has chosen to incorporate.  Simply put, "the First Amendment does not allow political speech restrictions based on a speaker's corporate identity."  *Id*. at 903.  Even where speech and association *limits* might be appropriate, "[a]n outright ban on corporate political

speech during the critical preelection period is not a permissible remedy." *Id.* at

911.  This echoes the *Buckley* doctrine that limits on contributions to candidates

can be tolerated precisely because *limits* still allow for association, as well as

expressions of support for the candidate or committee.  *Buckley*, 424 U.S. at 21-22.

*Bans*, on the other hand, allow for *no* speech or association.  They are not

constitutionally permissible.

122.   Mont. Code Ann. § 13-35-227 ban on corporate general-fund

contributions to candidates is unconstitutional under *Citizens United* and *Buckley*,

because it is an impermissible ban on political speech and association.

123.   Mont. Code Ann. § 13-35-337 ban on corporate general-fund

contributions to candidates burdens and chills Plaintiffs' political speech and

association.  It is unconstitutional because they fail the required strict scrutiny

review.  *See, Citizens United*, 130 S. Ct. at 898 (holding that laws that burden

political speech are subject to strict scrutiny).

124.   Even if the limits are subject to "closely drawn" scrutiny, they are

"too low" and "too strict" to survive and so are unconstitutional.  *Randall*, 548

U.S. at 248 and 262.

### Count V
### Mont. Code Ann. § 13-35-227 Ban On Corporate General Fund Contributions To Committees Making Independent Expenditures Is Unconstitutional.

125.   Plaintiffs reallege and incorporate by reference all of the allegations

contained in all of the preceding paragraphs.

126.   Mont. Code Ann. § 13-35-337 bans corporate general-fund contributions to committees, including those making independent expenditures.  It also bans committees accepting corporate general-fund contributions, including those earmarked for independent expenditures.

127.   The only constitutionally cognizable interest in restricting political speech and association is the interest in preventing quid pro quo corruption or its appearance. *Citizens United*, 130 S. Ct. at 901-12.  But "independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption." *Id*. at 909.  Consequently, contributions made to committees making independent expenditures do not give rise to corruption, either. *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 698 (9th Cir. 2010).  Limits on contributions for independent expenditures are therefore unconstitutional. *Id*. at 699.

128.   Mont. Code Ann. § 13-35-337's ban on corporate general-fund contributions to committees for the purpose of making independent expenditures burdens and chills the Plaintiffs' political speech and association.  It is unconstitutional under *Long Beach Area Chamber of Commerce*, and *Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011), because, as those courts recognized, there is no constitutionally cognizable interest in limiting contributions

to committees making independent expenditures.

129.   Mont. Code Ann. § 13-35-337 ban on corporate general-fund

contributions to committees for the purpose of making independent expenditures is

unconstitutional because it fails the required strict scrutiny review.  *See, Citizens*

*United*, 130 S. Ct. at 898 (holding that laws that burden political speech are subject

to strict scrutiny).

130.   Even if the ban is subject to "closely drawn" scrutiny, a ban is "too

low" and "too strict" to survive and so is unconstitutional.  *Randall*, 548 U.S. at

248 and 262.

## Count VI
## Mont. Code Ann. § 13-35-225(3)(a) Disclaimer Requirement Is Unconstitutional.

131.   Plaintiffs reallege and incorporate by reference all of the allegations

contained in all of the preceding paragraphs.

132.   Mont. Code Ann. § 13-35-225(3)(a) requires that all "printed election

material"[19] that includes information about a candidate's voting record must also

include "a reference to the particular vote or votes upon which the information is

based; a disclosure of contrasting votes known to have been made by the candidate

---

[19]"Printed election material" is defined to include "[a]ll communications
advocating the success or defeat of a candidate, political party, or ballot issue
through any broadcasting station, newspaper, magazine, outdoor advertising
facility, direct mailing, poster, handbill, bumper sticker, internet website, or other
form of general political advertising[.]" Mont. Code Ann. § 13-35-225(1).

on the same issue if closely related in time; and a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true." *Id*.

133.   "A statute must be sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998).  "A statute is vague if men of common intelligence must necessarily guess at its meaning and differ as to its application." *In re Doser*, 412 F.3d 1056, 1062 (9th Cir. 2005).  "Statutes that are insufficiently clear are void for three reasons:  (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on "arbitrary and discriminatory enforcement" by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Foti*, 146 F.3d at 638.

134.   The Disclaimer Requirement is void for vagueness.  It requires those making printed political statements that mention a candidate's voting record to guess as to what constitutes a contrasting vote on "the *same issue*" "*closely related in time*," without defining what those terms mean or what time period the statute contemplates.

135.   Mont. Code Ann. §§ 13-35-225(3)(a) and (b) disclaimer requirement is also void for vagueness because it inappropriately relies on the appeal-to-vote

test.  The Supreme Court rejected a contention that the appeal-to-vote test is vague by noting it applied only to electioneering communications as defined in the Federal Election Campaign Act ("FECA").  *WRTL-II* at 474 n. 7.  The implication is that elsewhere the test is vague.  *See, id*.  And after *Citizens United*, the appeal-to-vote test is always vague.  Even if that were not so, Montana's Disclaimer Requirement applies to more communications than just electioneering communications as defined in FECA.  *Compare* Mont. Code Ann. § 13-35-225(1) *with* 2 U.S.C. § 434(f)(3)(A) (2002).  The Disclaimer Requirement, relying upon the appeal-to-vote test, is void for vagueness.

136.   Mont. Code Ann. §§ 13-35-225(3)(a) and (b) disclaimer requirement is also a prior restraint on speech and so is unconstitutional.

137.   In addition, compelled disclosure substantially burdens First Amendment rights.  *Davis v. Fed. Election Commn.*, 128 S. Ct. 2759, 2774-75 (2008); *Buckley*, 424 U.S. at 64.  Disclaimer and disclosure requirements are evaluated under "exacting scrutiny," *id.*, which *Buckley* described as a "strict standard of scrutiny," *id*.  Under exacting scrutiny, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights."  *Davis*, 128 S. Ct. 2775.  Consequently, when disclaimer requirements "go beyond the reporting of funds to finance speech to affect the content of the communication itself[,]" they are content-based regulations of

speech and so are subject to strict scrutiny. *ACLU v. Heller*, 378 F.3d 979, 987-88 (9th Cir. 2004).

138.   The Disclaimer Requirement compels those criticizing a candidate's voting record to also speak in favor of the candidate by publicizing the candidate's contrasting votes.  This is unconstitutional under *ALCU v. Heller*, 378 F.3d 979, because it fails the required strict scrutiny review.  *See also, Pacific Gas & Electric v. Public Utilities Commn.*, 475 U.S. 1 (1986) (ruling compelled political speech about one's political opponents unconstitutional).

### Count VII
### Mont. Code Ann. § 13-37-131 False Statement Law is Facially Unconstitutional.

139.   Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

140.   The False Statement Law makes it "unlawful for a person to misrepresent a candidate's public voting record or any other matter *that is relevant to the issues of the campaign* with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false."  Mont. Code Ann. § 13-37-131(1) (emphasis added).  The italicized language renders this statute vague and so facially unconstitutionally under *Buckley*.

141.   The False Statement Law impermissibly reaches and regulates issue advocacy communications and so is overbroad and facially unconstitutional under

*Buckley* and its progeny.

142.   The False Statement Law is a content based restriction on speech that is subject to strict scrutiny review.  *See, U.S. v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010), *reh'g denied*, 638 F.3d 666 (9th Cir. 2011).  The False Statement Law fails to include a requirement that the government prove that the misrepresentation regarding a candidate's public voting record is injurious to the candidate or another individual.  It therefore does not fit within the First Amendment carve-out for defamation.  *Alvarez*, 617 F.3d 1198.  The False Statement Law also fails to include a requirement that the government prove that the one making a misrepre-sentation regarding a candidate's public voting record did so with the intent to mislead the listener, and succeeded in doing so.  It therefore does not fit within the First Amendment carve-out for fraudulent speech.  *Id*.  The False Statement Law cannot satisfy strict scrutiny and so is unconstitutional, both facially and as applied to the plaintiffs.  *See, id*.

### Count VIII
### Mont. Code Ann. § 13-37-131 False Statement Law Is Unconstitutional As Applied to Lobbyists Taking Positions on Political Issues.

143.   Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

144.   The False Statement Law makes it "unlawful for a person to misrepre-sent a candidate's public voting record or any other matter that is relevant to the

issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false." Mont. Code Ann. § 13-37-131(1).

145.   As applied to those engaging in direct citizen lobbying like ATP and MRTLA PAC taking positions on political issues and publishing their opinion concerning elected officials and their votes, the False Statement Law unconstitutionally penalizes protected opinion. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990).

### Prayer for Relief

Wherefore, Plaintiffs request the following relief:

1.   Declare Mont. Code Ann. §§ 13-37-216(1) and (5), which together limit the amount of contributions individuals may make to candidates, and candidates may accept from individuals, unconstitutional both facially and as applied to the Plaintiffs and enjoin their enforcement;

2.   Declare Mont. Code Ann. §§ 13-37-216(3) and (5), which together limit contributions political committees may make to candidates, and candidates may accept from political committees, unconstitutional both facially and as applied to Plaintiffs and enjoin their enforcement;

3.   Declare Mont. Code Ann. §§ 13-37-216(3) and (5), which together limit contributions political parties may make to their candidates, and candidates

Verified Complaint For Declaratory and Injunctive Relief                                          46

may accept from political parties, unconstitutional both facially and as applied to Plaintiffs and enjoin their enforcement;

4. Declare Mont. Code Ann. §§ 13-35-227(1) and (2) ban on corporations making general-fund contributions, and candidates and committees accepting corporate general-fund contributions, unconstitutional as they apply to corporate general-fund contributions to candidates and enjoin their enforcement;

5. Declare Mont. Code Ann. §§ 13-25-227(1) and (2) ban on corporations making and committees accepting general-fund corporate contributions unconstitutional as they apply to corporate general-fund contributions earmarked for independent expenditures and enjoin their enforcement;

6. Declare Mont. Code Ann. § 13-35-225(3)(a), which imposes burdensome and onerous disclaimer requirements on political speech, unconstitutional both facially and as it applies to Plaintiffs and enjoin its enforcement.

7. Declare Mont. Code Ann. § 13-37-131, which makes it unlawful to misrepresent a candidate's public voting record or any other matter that is relevant to the issues of the campaign, unconstitutionally both facially and as it applies to Plaintiffs and enjoin its enforcement;

8. Grant Plaintiffs their costs and attorney's fees under 42 U.S.C. § 1988

and any other applicable authority; and

9.      Grant any and all other relief this Court deems just and equitable.

DATED:  September 6, 2011.


/s/ James E. Brown
Local Attorney for All Plaintiffs