John E. Bloomquist
James E. Brown
DONEY CROWLEY PAYNE BLOOMQUIST P.C.
P.O. Box 1185
44 West 6th Avenue
Helena, MT 59601
Phone: (406) 443-2211
Fax: (406) 449-8443
Email:    jbloomquist@doneylaw.com
            jbrown@doneylaw.com
*Local Attorney for All Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **Doug Lair**; **Steve Dogiakos**; **American Tradition Partnership**; **American Tradition Partnership PAC**; **Montana Right to Life Association PAC**; **Sweet Grass Council for Community Integrity**; **Lake County Republican Central Committee**; **Beaverhead County Republican Central Committee**; **Jake Oil LLC**; **JL Oil LLC**; **Champion Painting Inc.**; and **John Milanovich**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **David B. Gallik**, in his official capacity as Commissioner of Political Practices; **Steve Bullock**, in his official capacity as Attorney General of the State of Montana; and **Leo Gallagher**, in his official capacity as Lewis and Clark County Attorney, <br><br> *Defendants*. | Case No. 1:11-cv-00102-RFC <br><br> **Plaintiffs' Preliminary Injunction Memorandum** <br><br> **Oral Argument Requested** |

# Table of Contents

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Facts Relating to The Limits on Individual and PAC Contributions to Candidates. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Facts Relating to the Aggregate Limit on Contributions From Political Parties to Their Candidates. . . . . . . . . . . . . . . . . . . 8

    C.    Facts Relating to Montana's Ban on General-Fund Corporate Contributions to Candidates. . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.    Facts Relating to Montana's Ban on Corporate General-Fund Contributions to Committees Making Independent Expenditures.. . 15

    E.    Facts Relating to Montana's Disclaimer Requirement. . . . . . . . . 17

    F.    Facts Concerning Montana's False Statement Law. . . . . . . . . . . 24

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    Preliminary Injunction Standard. . . . . . . . . . . . . . . . . . . . . . . . 28

    I.    The Plaintiffs Demonstrate Likely Merits Success. . . . . . . . . . . . 29

        A.    Montana's Individual and PAC Contribution Limits Are Unconstitutional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

            1.    The Limits Are Subject to Strict Scrutiny, Which They Fail.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-i-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

a.   Strict Scrutiny Applies.. . . . . . . . . . . . . . . . . . . 31

b.   The Limits Fail Strict Scrutiny Analysis.. . . . . . 33

2.   Even If Intermediate Scrutiny Applies, the Limits
Fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

B.   Montana's Political Party Contribution Limits Are
Unconstitutional.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

1.   The State Has No Interest In Its Limits.. . . . . . . . . . . 38

2.   Even If the State Had An Interest, Its Limits Are
Not Properly Tailored.  . . . . . . . . . . . . . . . . . . . . . . . . 40

C.   Montana's Ban On Corporate Contributions Is
Unconstitutional.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

1.   The Ban Impermissibly Discriminates on the
Basis of the Speaker's Corporate Identity. . . . . . . . . . . 45

a.   The First Amendment Forbids Speech
Restrictions Based On Speakers' Identities. . . . 45

b.   *Beaumont* Does Not Bar Holding
Montana's Ban Unconstitutional.. . . . . . . . . . . 47

2.   The Ban Is Not Properly Tailored and So Cannot
Pass Scrutiny. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

a.   Political Speech Bans Are Not Permissible. . . . 49

b.   Political Speech Bans Are Asymmetrical to
the Anticorruption Interest.. . . . . . . . . . . . . . . 50

D.     Montana's Ban On Corporate Contributions To Independent Expenditure Committees Is Unconstitutional. . . . . . . . . 51

E.     Montana's Disclaimer Law Is Unconstitutional. . . . . . . . . . 54

     1.     Montana's Disclaimer Law Is Void For Vagueness. . . 54

          a.     "Closely Related in Time" and "the Same Issue" Are Not Defined. . . . . . . . . . . . . . . . . . . 56

          b.     Montana's Reliance on the Appeal-to-Vote Test Renders the Disclaimer Requirement Vague. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

               1)     The Appeal-to-Vote Test Is Unconstitutionally Vague; And Even if Not, It May Only Be Applied to Electioneering Communications as Defined in FECA. . . . . . . . . . . . . . . . . . . . 60

               2)     Montana's Disclaimer Requirement Reaches More Speech Than Electioneering Communications as Defined in FECA. . . . . . . . . . . . . . . . . . . . 67

     2.     Montana's Disclaimer Requirement Is an Impermissible Prior Restraint on Speech. . . . . . . . . . . 70

     3.     Montana's Disclaimer Requirement Fails the Required Strict Scrutiny Review. . . . . . . . . . . . . . . . . . 73

          a.     The Disclaimer Requirement is a Content-Based Restriction on Speech With Heavy Burdens. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

          b.     The Disclaimer Requirement Fails Scrutiny. . . . 78

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-iii-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

F.    Montana's False Statement Law Is Unconstitutional. . . . . . 80

    1.    The False Statement Law is Void for Vagueness. . . . 81

    2.    The False Statement Law is Overbroad. . . . . . . . . . . 82

    3.    The False Statement Law Is a Content-Based Restriction on Speech That Fails Strict Scrutiny Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

        a.    The Speech Proscribed by the False Statement Law Is Protected By the First Amendment. . . . . 91

            1)    The False Statement Law Proscribes More Than Defamation. . . . . . . . . . . . . . 92

            2)    The False Statement Law Proscribes More Than Fraud. . . . . . . . . . . . . . . . . . . 93

        b.    The False Statement Law Fails Strict Scrutiny Review. . . . . . . . . . . . . . . . . . . . . . . . . 93

    4.    The False Statement Law Is Unconstitutional as Applied to Lobbyists Taking Positions on Political Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

II.    The Plaintiffs Will Suffer Irreparable Harm.. . . . . . . . . . . . . . . . . . 98

III.    The Balance of Hardships Favors the Plaintiffs. . . . . . . . . . . . . . . . 99

IV.    The Public Interest Favors An Injunction. . . . . . . . . . . . . . . . . . 100

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101

Local Rule 7.1(d)(2)(E) Word Verification Certification. . . . . . . . . . . . . . . . . . 102

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-iv-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

# Table of Authorities

## *Cases*

*281 Care Committee v. Arneson*, 638 F.3d 621
  (8th Cir. 2011)..................................... 87, 88, 90, 91, 92, 93, 94

*ACLU v. Heller*, 378 F.3d 979 (9th Cir. 2004)......... 73-74, 74, 75, 78, 85, 100

*Alexander v. U.S.*, 509 U.S. 544 (1993). .................................. 71

*Anderson v. Celebrezze*, 460 U.S. 780 (1983). ............................ 39

*Anderson v. Speer*, 356 F.3d 651 (6th Cir. 2004)......................... 85

*Beaumont v. FEC*, 137 F.Supp.2d 648 (E.D.N.C. 2000). .................... 47

*Beaumont v. FEC*, 278 F.3d 261 (4th Cir. 2002). ......................... 48

*Brown v. Cal. Dept. of Transp.*, 321 F.3d 121 (9th Cir.
  2003). .................................................. 99

*Brown v. Hartlage*, 456 U.S. 45 (1982). ................................. 94

*Buckley v. Valeo*, 424 U.S. 1 (1976)................................. *passim*

*California Democratic Party v. Jones*, 530 U.S. 567 (2000)................ 38

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088
  (9th Cir. 2003)......................................... 87

*Cantwell v. Connecticut*, 310 U.S. 296 (1940)........................... 89

*Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021,
  (9th Cir. 2009)......................................... 79

*Carey v. FEC*, __F.Supp.2d__, 2011 WL 2322964 (D.D.C. 2011). ........... 33

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-v-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*Carroll v. Commissioners of Princess Anne*, 393 U.S. 175 (1968). . . . . . . . . . . . 99

*Center for Individual Freedom v. Tennant*, Slip Copy, 2011 WL 2912735
(S.D.W.Va. July 18, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

*Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647
(9th Cir. 2007) ("*Citizens*").. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Citizens United v. FEC*, 130 S.Ct. 876 (2010). . . . . . . . . . . . . . . . . . . . . . *passim*

*Clark v. Valeo*, 559 F.2d 642 (D.C. Cir. 1977).. . . . . . . . . . . . . . . . . . . . . . . 30

*Colorado Republican Federal Campaign Committee v. FEC*,
518 U.S. 604 (1996) ("*Colorado-I*").. . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Community House, Inc. v. City of Boise*, 490 F.3d 1041
(9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

*Elrod v. Burns*, 427 U.S. 347 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98

*Family PAC v. Reed*, No. C09-5662RBL (D. Wash.
September 1, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*FEC v. Beaumont*, 539 U.S. 146 (2003). . . . . . . . . . . . . . . . . . 31, 47, 48 and n.11

*FEC v. Colorado Republican Federal Campaign Committee*,
533 U.S. 431 (2001) ("*Colorado-II*"). . . . . . . . . . . . . . . . . . . . . 38, 40, 41, 42

*FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986)
("*MCFL*"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 32, 47 n.10

*FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007)
("*WRTL-II*").. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*First National Bank of Boston v. Bellotti*, 435 U.S. 765
(1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45, 46, 73

*Foti v. City of Menlo Park*, 146 F.3d 629, (9th Cir. 1998). . . . . . . . . . . . 55, 59, 74

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). . . . . . . . . . . . . . . . . . . . . . 72

*G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d
    1071 (6th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

*Gitlow v. People of State of New York*, 268 U.S. 652 (1925). . . . . . . . . . . . . . . . 1

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 40, 44

*Gregg v. Georgia*, 428 U.S. 153 (1976)). . . . . . . . . . . . . . . . . . . . . . . . . . . 62 n.12

*Human Life of Washington v. Brumsickle*, 624 F.3d 990
    (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83, 87

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of*
    *Boston*, 515 U.S. 557 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76-77, 78

*Hustler Magazine v. Falwell*, 485 U.S. 46 (1988). . . . . . . . . . . . . . . . . . . . . . . . 96

*Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837 (1st Cir.
    1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

*Ill. ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600
    (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

*In re Doser*, 412 F.3d 1056 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*In Re Gableman*, 784 N.W.2d 631 (Wis. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 89

*Jacobus v. Alaska*, 338 F.3d 1095 (9th Cir. 2003). . . . . . . . . . . . . 32, 34, 36, 41, 44

*Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613
    (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

BOPP, COLESON & BOSTROM        **-vii-**       *Lair et al. v. Gallik et. al.*
1 South Sixth Street                           Case No. _____
Terre Haute, Indiana 47807-3510
(812) 232-2434                             Pls.' Preliminary Injunction Memo

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009). . . . . . . . . . . . . . 100

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir.2005). . . . . . . . . . . . . . . . . . . . . . . . . 95

*Landell v. Sorrell*, 406 F.3d 159 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 31

*Landell v. Sorrell*, 118 F. Supp. 2d 459 (D. Vt. 2000). . . . . . . . . . . . . . . . . . . . 38

*Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 52, 53

*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

*Marks v. United States*, 430 U.S. 188 (1977). . . . . . . . . . . . . . . . . . . . . . . . 62 n.12

*McConnell v. FEC*, 540 U.S. 93 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . 61, 67, 85

*Meyer v. Grant*, 486 U.S. 414 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88, 90

*Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974). . . . . . . . . . . . . 77

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). . . . . . . . . . . . . . . . . . . 95, 97

*NAACP v. Alabama*, 357 U.S. 449 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98, 99

*National Right to Work Legal Def. & Educ. Found., Inc. v. Herbert*, 581 F. Supp.2d 1132 (D. Utah 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*New York Times v. Sullivan*, 376 U.S. 254 (1964). . . . . . . . . . . . . . . . . . . . . 89, 97

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

–viii–

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*N.C. Right to Life v. Leake,* 525 F.3d 274 (4th Cir.2008).. . . . . . . . . . . . . . . . . . . 53

*Pacific Gas & Electric Company*, 475 U.S. 1 (1986). . . . . . . . . . . . . . . . . . . . 77, 78

*Paramount Land Co. LP v. California Pistachio Com'n,* 491 F.3d 1003 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99

*Pest Committee v. Miller*, 626 F.3d 1097 (9th Cir. 2010). . . . . . . . . . . . . . . . . . 82

*Randall v. Sorrell*, 548 U.S. 230 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002). . . . . . . . . . . . . . . 40

*Rickert v. State*, 168 P.3d 826 (Wash. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

*Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 973-74 (9th Cir. 2002). . . . . . . . . . . . 28, 99, 100

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969). . . . . . . . . . . . . . 98-99

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975). . . . . . . . . . . . . . 71

*Texas v. Johnson*, 491 U.S. 397 (1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

*Thalheimer v. City of San Diego,* __F.3d__, 2011 WL 2400779 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32, 52, 53

*Thomas v. Collins*, 323 U.S. 516 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997). . . . . . . . . . . . . . . 38

*U.S. v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010) ("*Alvarez-I*"). . . . . . . . . . . . . . . . . . . . . . . . . . . . 90, 91, 92, 93, 94, 95, 96

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-ix-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*U.S. v. Alvarez*, 638 F.3d 666 (9th Cir. 2011)
("*Alvarez-II*").. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88, 89, 90, 91, 94

*U.S. v. Danielczyk*, __F. Supp.__, 2011 WL 2161794 (E.D. Vir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 49

*U.S. v. Danielczyk*, __F. Supp.__, 2011 WL 2268063 (E.D. Vir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*U.S. v. Salerno*, 481 U.S. 739, 745 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

*U.S. v. Stevens*, 130 S.Ct. 1577 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 83, 91

*U.S. v. Williams*, 553 U.S. 285 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).. . . . . . . . . . . . . . . . . . . 30

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988). . . . . . . . . . . . . . . . . . . 83

*Virginia v. Hicks*, 539 U.S. 113 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . 66, 82

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

*Whitney v. California*, 274 U.S. 357 (1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

*Winter v. Natural Res. Def. Council,* 555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . 28

*Yahoo!, Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98

**Statutes, Rules, and Constitutional Provisions**

U.S. Const. amend I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

2 U.S.C. § 434(f)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

2 U.S.C. § 434(f)(3)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

2 U.S.C. § 441a(c)(1)(B)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43 n.6, n.9

2 U.S.C. § 441a(d)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43 n.9

2 U.S.C. § 441a(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43 n.6

2 U.S.C. § 441b(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

2 U.S.C. § 441e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

11 CFR 100.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 n.1

Mont. Code Ann. § 2-15-501(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mont. Code Ann. § 7-4-2716. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mont. Code Ann. § 13-35-103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 57

Mont. Code Ann. § 13-35-104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mont. Code Ann. § 13-35-225. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Mont. Code Ann. § 13-35-225(1). . . . . . . . . . . . . . . . . . . . . . . . 18, 56, 60, 68

Mont. Code Ann. § 13-35-225(3)(a). . . . . . . . . . . . .   18, 54, 56, 57, 67, 70, 72, 75

Mont. Code Ann. § 13-35-225(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Mont. Code Ann. § 13-35-227(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Mont. Code Ann. § 13-35-227(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Mont. Code Ann. § 13-37-111. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-xi-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Mont. Code Ann. § 13-37-113. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Mont. Code Ann. § 13-37-114. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Mont. Code Ann. § 13-37-124. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Mont. Code Ann. § 13-37-125. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mont. Code Ann. § 13-37-128. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mont. Code Ann. § 13-37-131. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

Mont. Code Ann. § 13-37-131(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 81, 96

Mont. Code Ann. § 13-37-131(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 96

Mont. Code Ann. § 13-37-131(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Mont. Code Ann. § 13-37-216(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 29

Mont. Code Ann. § 13-37-216(3). . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 8, 12, 29, 37

Mont. Code Ann. § 13-37-216(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Mont. Code Ann. § 13-37-216(5). . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 9, 12, 29

Mont. Admin. R. 44.10.323(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 n.2

**Other Authority**

*In the Matter of the Complaint Against Western Tradition Partnership*
    *and the Coalition for Energy and the Environment* (Decision of
    the Commissioner of Political Practices). . . . . . . . . . . . . . . . . . . . . . . . 19

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-xii-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

# Introduction

This is a free speech and association case arising under the First and Fourteenth Amendments to the United States Constitution. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend I. The First Amendment protects not only speech, but also association. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). And the Fourteenth Amendment incorporates the First Amendment, making it applicable to State and local governments. *See, e.g.*, *Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925).

The Plaintiffs in this case want to engage in their proposed political speech and association activities *right now*, in the months leading up to the upcoming 2012 election, but are prohibited by Montana's election and campaign finance laws as codified in Chapters 35 and 37 of the Montana Code Annotated ("MCA"). These laws unconstitutionally restrict the Plaintiffs' First Amendment free speech and association rights by preventing them from engaging in their desired speech and association. They have therefore filed their lawsuit challenging the constitutionality of these laws and seek a preliminary injunction against their enforcement.

As the Supreme Court recognizes, "[t]here are short timeframes in which [election-related] speech can have influence." *Citizens United v. FEC*, 130 S.Ct.

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-1-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

876, 895 (2010). If the Plaintiffs must wait to speak and associate until the Court declares Montana's laws unconstitutional, the 2012 election may have passed and the Plaintiffs' First Amendment activity will have been "stifled." *Id*. A preliminary injunction is therefore required so the Plaintiffs may engage in their constitutionally-protected political speech and association in a timely fashion, while it may make a difference for the 2012 election.

## Facts

As set out more fully in the Verified Complaint ("VC"), the facts are as follows.

Montana has enacted a series of campaign finance and election laws, codified in Chapters 35 and 37 of the Montana Code Annotated ("MCA"). (VC ¶ 1.) The Commissioner of Political Practices, Defendant Dennis Gallik, has authority to investigate violations of, enforce the provisions of, and hire attorneys to prosecute violations of, Montana Code Chapters 35 and 37 and the rules adopted to carry out these provisions. MCA §§ 13-37-111, 13-37-113, 13-37-114, and 13-37-124. (VC ¶ 16.) The Commissioner acts under color of law and is sued in his official capacity. (*Id*.)

Montana Attorney General, Defendant Steve Bullock, also has power to investigate and prosecute violations of Montana Code Chapters 35 and 37 by and

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-2-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

through the county attorneys under his supervision. MCA §§ 2-15-501(5), 13-37-124, 13-37-125, and 13-37-128. (VC ¶ 17.) The Attorney General acts under color of law and is sued in his official capacity. (*Id*.)

Montana's County Attorneys also have power to investigate and prosecute violations of Montana Code Chapters 35 and 37. MCA §§ 7-4-2716, 13-37-124, 13-37-125, 13-37-128. (VC ¶ 18.) Defendant Leo Gallagher is the Lewis and Clark County Attorney. (*Id*.) The County Attorney acts under color of law and is sued in his official capacity. (*Id*.)

Those accused of violating or attempting to violate any of Montana's law challenged in this lawsuit are subject to prosecution. MCA § 13-37-124. If convicted of violating or attempting to violate any of the challenged provisions they are guilty of a misdemeanor, MCA §§ 13-35-103, 13-35-104, and are subject to fines, MCA §13-37-128. (VC ¶ 33.) In addition to the Plaintiffs' planned and desired activity recited herein, each of the Plaintiffs plan to engage in substantially similar future activity. (VC ¶ 96.) The Plaintiffs have no adequate remedy at law. (VC ¶ 97.)

## A.    Facts Relating to The Limits on Individual and PAC Contributions to Candidates.

Montana limits the contributions individuals and political action committees

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-3-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

("PACs") may make to candidates. MCA §§ 13-37-216(1) and (3). The limits are

to be adjusted for inflation. MCA Section 13-37-216(4). The current limits are:

> (1) $600 for contributions candidates for Governor and Lieutenant
> Governor;

> (2) $300 for contributions to candidates for other statewide offices,
> including Attorney General, Secretary of State, State Auditor, Superinten-
> dent of Public Instruction, Supreme Court Justice, and Clerk of the Supreme
> Court; and

> (3) $160 for contributions from individuals and political committees
> to candidates for other public offices, including candidates for State Senate,
> State House, and District Judge.

*Id*. (VC ¶ 20.) Montana also limits the contributions that candidates may solicit

and accept to no more than these limits. MCA § 13-37-216(5). (VC ¶ 21.)

Plaintiff Doug Lair is a Big Timber area rancher and investor. (VC ¶ 34.)

Plaintiff Steve Dogiakos is a small businessman who owns a company offering

web design services. (VC ¶ 35.) Both Mr. Lair and Mr. Dogiakos have previously

made contributions to candidates running for office in Montana. (VC ¶ 36.) And

they both plan to make contributions to candidates running for office in Montana's

general 2012 election. (VC ¶ 37.)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-4-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Mr. Lair plans to contribute to Republican candidates for Governor, Attorney General, the State House, and the State Senate up to the maximum amount allowed by law. (VC ¶ 38.) Specific planned contributions include a planned $160 contribution to Mr. Ed Walker, 2012 candidate for Montana Senate from Senate District 29, a $160 contribution to Mr. Dan Kennedy, 2012 candidate for the State House from House District 57, a $600 contribution to Mr. Ken Miller, 2012 candidate for Governor, and a $600 contribution to Mr. Jeff Essmann if he decides to run for Governor in 2012. (*Id*.) In addition to these planned contributions, Mr. Lair plans to make other contributions as well. (*Id*.)

Mr. Dogiakos plans to contribute to the Republican candidate for Governor and Attorney General, as well as to Republican candidates for the State House and Senate. (VC ¶ 39.) Mr. Dogiakos plans to contribute the maximum amount allowed by law to each of these candidates. (*Id*.) Specific planned contributions include a $160 contribution to Ms. Christy Clark, 2012 candidate for the Montana House from House District 17, and a $160 contribution to Mr. Bob Lake, 2012 candidate from Senate District 44 for the Senate. (*Id*.) In addition to these planned contributions, Mr. Dogiakos plans to make other contributions as well. (*Id*.)

Mr. Lair and Mr. Dogiakos also want to make contributions to each of their chosen candidates that are greater than the contribution limits imposed by MCA

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-5-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Sections 13-37-216(1), (3), and (5). (VC ¶ 40.) They would each like to contribute at least $750 to their chosen candidates for State House and State Senate, and at least $1,000 to their chosen candidates for Attorney General and Governor. (*Id*.) They are ready, willing, and able to make these contributions and would do so, but for the limits imposed by MCA Sections 13-37-216(1), (3), and (5), and the penalties imposed on those who violate the limits. (*Id*.)

Plaintiff American Tradition Partnership MT-PAC ("ATP PAC") is the connected PAC for Plaintiff American Tradition Partnership.[1] (VC ¶ 64.) It is a registered PAC under the laws of the State of Montana. (*Id*.) It wants to make contributions to candidates for election in Montana in 2012 for Governor, Secretary of State, State Senator, and State Representative. (VC ¶ 68.) ATP PAC will contribute to each of its chosen candidates up to the amount allowed by law. (*Id*.) Specific planned contributions include a $600 contribution to Rick Hill, candidate for Governor in 2012; a $600 contribution to Ken Miller, also a candidate for Governor in 2012; a $300 contribution to Scott Aspenlieder, candidate for Secretary of State in 2012; a $160 contribution to Ryan Osmundson, candidate for the

---

[1]In the federal regime, a "connected organization" is a corporation, union, etc. that forms a PAC. The PAC is described as a "connected PAC" to distinguish it from all those that are "nonconnected." *See* 11 CFR 100.6. The Plaintiffs utilize these terms to describe the various corporations and PACs involved in this lawsuit.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-6-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

House in 2012 from District 29; a $160 contribution to Cary Smith, candidate for the House in 2012 from District 57; a $160 contribution to Jim Keane the Democrat candidate for the Senate in 2012 from District 38; and a $160 contribution to John Brenden, candidate for the Senate in 2012 from District 18. (*Id.*) In addition to these planned contributions, ATP PAC plans to make other contributions as well. (*Id.*)

Plaintiff ATP PAC wants to make contributions greater than the limits imposed by MCA Sections 13-37-216(1), (3), and (5). (VC ¶ 69.) It would like to contribute at least $1,500 to each of its chosen candidates. (*Id.*) It is ready, willing, and able to make these contributions and would do so, but for the limits imposed by MCA Sections 13-37-216(1), (3), and (5), and the penalties imposed on those who violate the limits. (*Id.*)

Plaintiff John Milanovich resides in Bozeman and is the founder and President of RightPSI, Inc, which manufactures tire pressure indicators. (VC ¶ 87.) Mr. Milanovich is also an experienced candidate. (VC ¶ 88.) He ran unsuccessfully for the State House in 2008 and also appeared on the ballot for the Republican primary in 2010, but decided to endorse one of his primary opponents in that race. (*Id.*) Mr. Milanovich intends to run for the State House again in 2012 from House District 69 on the Republican ticket. (VC ¶ 89.) He has already filed his

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-7-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

"Statement of Candidate" Form C-1 with the Office of the Commissioner of Montana Political Practices, making him eligible to solicit and accept contributions for his campaign. (VC ¶ 90.) And Mr. Milanovich is currently doing so. (*Id.*) He wants to solicit and accept contributions above the $160 contribution limit for candidates for the House. (VC ¶ 91.) He would do so but for the law and its penalties. (*Id.*)

**B.  Facts Relating to the Aggregate Limit on Contributions From Political Parties to Their Candidates.**

Montana also limits contributions from political parties to their candidates by imposing an aggregate limit on the contributions all political parties may make to any candidate. (VC ¶ 22.) The current aggregate limits are:

(1) $21,600 candidates for Governor or Lieutenant Governor;

(2) $7,800 for candidates for Attorney General, Secretary of State, State Auditor, Superintendent of Public Instruction, Supreme Court Justice, and Clerk of the Supreme Court;

(3) $3,100 for candidates for the Public Service Commission;

(4) $1,250 for candidates for the State Senate; and

(5) $800 for candidates for the State House.

MCA § 13-37-216(3). (VC ¶ 22.) Montana also limits the contributions that

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-8-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

candidates may solicit and accept to no more than these limits. MCA § 13-37-216(5). (VC ¶ 23.) Because these are *aggregate* limits, once candidates have accepted contributions reaching the limit from a political party or parties, they may not accept any additional contributions from any other political party. (VC ¶ 24.)

The Lake County Republican Central Committee ("Lake County Republicans") is the local Republican Party for Lake County. (VC ¶ 79.) It has a history of making contributions to Republican candidates, including in the last election. (*Id.*) The Lake County Republicans plan to make contributions to candidates in the 2012 election. (VC ¶ 80.) Specific planned contributions include an $800 contribution to Joe Reed, who will be running for election in House District 15, and a $1,250 contribution to whichever Republican runs for election in Senate District 6. (*Id.*) They plan to contribute up to the limits allowed by law. (*Id.*)

The Beaverhead County Republican Central Committee ("Beaverhead County Republicans") is the local Republican Party for Beaverhead County. (VC ¶ 82.) It has a history of making contributions to Republican candidates, including in the last election. (*Id.*) The Beaverhead County Republicans plan to make contributions to candidates in the 2012 election. (VC ¶ 83.) Specific planned contributions include an $800 contribution to Joe Reed, who will be running for election in House District 15; a $1,250 contribution to Debby Barrett, who will be

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-9-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

running for re-election in Senate District 36; and a $21,600 contribution to the Republican candidate for Montana governor. (*Id*.) These are the maximum contributions allowed by law. (*Id*.)

But under the aggregate political party contribution limits, Plaintiffs Lake County Republican Central Committee and Beaverhead County Republican Central Committee may not both make an $800 contribution to Joe Reed as they want to do. (VC ¶¶ 24, 80, 83.) Rather, if the Lake County Republicans have already made an $800 contribution, the Beaverhead County Republicans are prohibited from making any contribution, unless Mr. Reed first refunds the contribution (or a part of it) that he received from the Lake County Republicans. (VC ¶ 24.) This is true even though the Lake County Republicans and the Beaverhead County Republicans are separate and autonomous county central committees for the Republican Party. (VC ¶ 86.) Each is separate and autonomous from every other Republican Party committee, including the State Party. (*Id*.) They have different members and officers and each make their own decisions about which candidates they will support. (*Id*.) One does not control the other, and while they are free to discuss their plans with one another they generally do not. (*Id*.)

Similarly, if another political party makes a contribution to their chosen candidates for other offices, the Lake County Republicans and the Beaverhead

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-10-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

County Republicans have their allowable contribution limit for those candidates reduced accordingly. (VC ¶ 24.) And if another political party makes the full contribution allowed by law to their chosen candidates, the Lake County Republicans and the Beaverhead County Republicans are not allowed to make *any* contribution to their chosen candidates. (*Id*.) Rather, the aggregate limit on political party contributions functions as a ban prohibiting political parties from making any contributions to candidates once those candidates have accepted the maximum allowable contribution from another political party or parties.  (*Id*.)

The Beaverhead County Republicans has first-hand experience with the deleterious effect the aggregate limits have on political speech and association. (VC ¶ 84.) It attempted to make contributions to several candidates for state house and state senate during the 2010 election. (*Id*.) Because of the aggregate party contribution limits, five of those candidates were forced to return the Beaverhead County Republicans' contributions. (*Id*.) Consequently, the Beaverhead County Republicans were not allowed to make even the symbolic expression of support that a minimal contribution might allow. (*Id*.) Nor was it allowed to associate itself with its candidates of choice by making a contribution to them. (*Id*.) As a result, the Beaverhead County Republicans had its speech and association rights violated as a result of the aggregate limits. (*Id*.) (*See also* VC, Exh. 3.)

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-11-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

The Lake County Republicans and the Beaverhead County Republicans each want to be allowed to make their planned contributions, even if other political parties also make contributions to their chosen candidates. (VC ¶¶ 80, 83.) They would do so, but for the aggregate limits imposed by MCA Sections 13-37-216(3) and (5), and the penalties imposed on those who violate them. (VC ¶¶ 80, 83.)

Mr. Milanovich, meanwhile, does not want to be restricted in his soliciting and accepting of contributions by the aggregate political party contribution limits. (VC ¶ 93.) Mr. Milanovich wants to solicit and accept contributions from multiple parties in amounts that would cause his aggregate contribution from all political parties to rise above $800. (VC ¶¶ 92-93.) He would do so, but for the law and its penalties. (VC ¶¶ 92-93.)

In addition, both the Lake County Republicans and the Beaverhead County Republicans want to make contributions to their chosen candidates that are greater than the aggregate contribution limits. (VC ¶¶ 81, 85.) They each want to make contributions of $2,000 to their chosen candidates, and would do so, but for the law and its penalties. (VC ¶¶ 81, 85.) And Mr. Milanovich wants to solicit and accept contributions from the Montana Republican Party above the $800 contribution limit. He also wants to solicit and accept contributions from various county

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-12-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Republican parties above the $800 contribution limit. (VC ¶ 92.) He would do so but for the law and its penalties. (*Id*.)

## C. Facts Relating to Montana's Ban on General-Fund Corporate Contributions to Candidates.

Montana also bans corporate general-fund contributions to candidates, and likewise prohibits candidates accepting general-fund corporate contributions. MCA § 13-35-227(1), (2). (VC ¶ 25.)

Plaintiffs JL Oil, LLC and Jake Oil, LLC are Montana corporations that engage in oil and gas exploration and development. (VC ¶¶ 12-13, 70.) Plaintiff Champion Painting, Inc., is a Montana corporation that has served Montana for over 30 years as a painting contractor. (VC ¶¶ 14, 70.) None of the corporations are publicly traded. (VC ¶ 72.) Nor is any a non-profit advocacy corporation; thus, none qualifies as an "MCFL-type Corporation" under *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986) ("*MCFL*"). (VC ¶ 71.) Each is a for-profit corporation, organized to provide services to Montanans and make money for their owners. (*Id*.)

Each of the corporation-plaintiffs wants to support candidates running for election for Montana state offices in 2012 by making general-fund, direct contributions to their chosen candidates up to the amount allowed by Montana's

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-13-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

contribution limits for individuals. (VC ¶ 73.) Examples of specific, planned contributions for JL Oil, LLC include a $600 contribution to Ken Miller, candidate for Governor; and a $160 contribution to Cary Smith, candidate for State House from House District 55. (VC ¶ 74.) In addition to these contributions, JL Oil wants to make other contributions to other candidates it determines support a conservative, pro-business agenda that would be beneficial to its business. (*Id.*)

Jake Oil, LLC wants to make the maximum $300 contribution to Kevin Olsen, Marv McCann, Kyle Olsen, and Nels Swandel, candidates for Secretary of State, Attorney General, State Auditor, and State Supreme Court Judge, respectively. (VC ¶ 75.) It also plans to make a maximum $300 contribution to other conservative candidates for these offices if its chosen candidates do not run. (*Id.*) Jake Oil, LLC also plans to make the maximum $160 contribution to Ed Walker, candidate for State Senate from Senate District 29, and Dan Kennedy, candidate for State House from House District 57. (*Id.*) In addition, Jake Oil LLC wants to make other contributions to other candidates it support a conservative, pro-business agenda that would be beneficial to its business. (*Id.*)

Examples of specific, planned contributions for Champion Painting, Inc., include a $160 contributions to Rep. Mike More, who will stand for re-election from House District 70; a $160 contribution to Rep. Tom Burnett, who will stand

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-14-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

for re-election from House District 63; and a $600 contribution to Ken Miller, who will run for Governor in 2012. (VC ¶ 76.)

Plaintiffs Jake Oil, JL Oil, and Champion Painting would each make their planned contributions, but for the ban imposed by Montana's law and the penalties imposed on those who violate the ban. (VC ¶ 78.)

Plaintiff John Milanovich, meanwhile, has a conservative, pro-business philosophy. (VC ¶ 94.) He believes that he would be able to attract contributions from business corporations if the law allowed. (*Id*.) Mr. Milanovich wants to solicit and accept contributions from corporations. (*Id*.) He would do so but for the ban on corporation contributions to candidates and the penalties imposed on those who violate the ban. (*Id*.)

**D.    Facts Relating to Montana's Ban on Corporate General-Fund Contributions to Committees Making Independent Expenditures.**

In addition to banning all general-fund corporate contributions to candidates, Montana also bans all general-fund corporate contributions to committees making independent expenditures.[2] MCA § 13-35-227(1), (2). (VC ¶ 25.)

---

[2]Under Montana law, an independent expenditure is "an expenditure for communications expressly advocating the success or defeat of a candidate or ballot issue which is not made with the cooperation or prior consent of or in consultation with, or at the request or suggestion of, a candidate or political committee or an agent of a candidate or political committee." Mont. Admin. R. 44.10.323(3).

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-15-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Plaintiff ATP PAC plans to make independent expenditures advocating the election or defeat of candidates in the 2012 election cycle. (VC ¶ 66.) It wants to solicit and accept unlimited contributions from all sources (including corporations) for its independent expenditures. (*Id.*) If allowed to accept such contributions, ATP PAC will segregate the corporate funds to ensure that they are only used to fund independent expenditures so long as Montana law bans corporate contributions to candidates. (VC ¶ 67.) But ATP PAC cannot solicit nor accept contributions from corporations for its independent expenditures because Montana's law prohibits such contributions. (VC ¶ 66.)

Montana Right to Life Association PAC ("MRTLA PAC") is a registered PAC under Montana law. (VC ¶ 47.) It is the connected PAC of Right to Life of Montana, an association of citizens which seeks to educate Montanans regarding the pro-life position, engage in direct citizen lobbying, and also effect legislation furthering the pro-life cause. (*Id.*) Part of the way it fulfills this mission is through its connected PAC, MRTLA PAC. (*Id.*) The PAC plans to make independent expenditures advocating the election or defeat of candidates in the 2012 election cycle. (VC ¶ 48.) It wants to accept unlimited contributions from all sources (including corporations) for its independent expenditures. (VC ¶ 53.) If allowed to accept such contributions, MRTLA PAC will segregate the corporate funds to

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-16-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

ensure that they are only used to fund independent expenditures so long as Montana law bans corporate contributions to candidates. (VC ¶ 54.) But MRTLA PAC cannot solicit nor accept contributions from corporations for its independent expenditures because Montana's law prohibits such contributions. (VC ¶ 53.)

Plaintiffs JL Oil, LLC, Jake Oil, LLC, and Champion Painting, Inc., meanwhile, want to make direct, general-fund contributions to committees that make independent expenditures in support of, or opposition to, candidates. (VC ¶ 77.) Each of the Corporations would make contributions earmarked for independent expenditures to Plaintiff ATP PAC, but are prohibited from doing so by the law. (*Id.*) Also, Plaintiff Champion Painting, Inc, would make additional contributions earmarked for independent expenditures to Plaintiff MRTLA PAC, but is prohibited from doing so by law. (*Id.*) Each of the corporations is ready, willing, and able to make their contributions and would do so but for the ban imposed by Montana's law and the penalties imposed on those who violate the ban. (VC ¶ 78.)

**E.   Facts Relating to Montana's Disclaimer Requirement.**

Montana law requires that all "printed election material" that includes information about a candidate's voting record must also include "a reference to the particular vote or votes upon which the information is based; a disclosure of contrasting votes known to have been made by the candidate on the same issue if

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-17-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

closely related in time; and a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true." (The "disclaimer requirement"). MCA § 13-35-225(3)(a). "Printed election material" is defined to include "[a]ll communications *advocating the success or defeat of a candidate*, political party, or ballot issue through any broadcasting station, newspaper, magazine, outdoor advertising facility, direct mailing, poster, handbill, bumper sticker, internet website, or other form of general political advertising[.]" MCA § 13-35-225(1) (emphasis added). (VC ¶¶ 26-28.)

Neither the Montana Code Annotated nor the Administrative Rules of Montana define the phrase "advocating the success or defeat of a candidate." (VC ¶ 29.) Nor do the Montana Code Annotated or the Administrative Rules of Montana limit the phrase "advocating the success or defeat of a candidate" to that type of communication the Supreme Court has defined as "express advocacy" in *Buckley v. Valeo*, 424 U.S. 1, 44 and 44 n.52 (1976). (VC ¶ 30.) In fact, the Commissioner of Political Practices has rejected the rule of *Buckley v. Valeo*, 424 U.S. at 44 n.52, that express advocacy must be limited to "communications containing express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,'

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-18-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

'defeat,' 'reject.'" Instead, the Commissioner of Political Practices states that

communications may be "the functional equivalent of express advocacy" when

"the ad is susceptible of no reasonable interpretation other than as an appeal to

vote for or against a specific candidate." (VC ¶ 30 and VC, Ex. 2, *In the Matter of*

*the Complaint Against Western Tradition Partnership and the Coalition for*

*Energy and the Environment* (Decision of the Commissioner of Political Prac-

tices), at 34.) Because "advocating the success or defeat of a candidate" it is not

limited to *Buckley*'s "communications containing words of express advocacy," the

phrase may reach even "issue advocacy;" that is, "speech about public issues more

generally," but which "mentions a candidate." *FEC v. Wisconsin Right to Life*, 551

U.S. 449, 456 (2007) ("*WRTL-II*"). (VC ¶ 31.)

Plaintiff American Tradition Partnership is an association of citizens that

has chosen to incorporate in the State of Colorado as a non-stock, non-profit

corporation. It is registered to do business in Montana. (VC ¶ 41.) American

Tradition Partnership's mission is to fight environmental extremism and promote

responsible development and management of land, water, and natural resources in

the Rocky Mountain West and across the United States. (VC ¶ 42.) It is committed

to advancing a voluntary, free-market approach to partnering with the business

community to promote beneficial environmental stewardship. (*Id*.) American

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-19-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Tradition Partnership seeks to achieve its goals through hard-hitting issue advocacy including legislative lobbying, direct citizen lobbying, electioneering, grassroots mobilization, and public education campaigns. (*Id.*) In its direct citizen lobbying activities, American Tradition Partnership expresses its opinion of both legislation and also elected officials and their votes on matters important to American Tradition Partnership. (VC ¶ 44.)

American Tradition Partnership wants to produce printed issue advocacy communications prior to the 2012 general election that will educate the public concerning incumbents' votes on various bills that either were, or were not, consistent with American Tradition Partnership's philosophy of responsible development and management of land, water, and natural resources. (VC ¶ 46.) As part of that process, American Tradition Partnership intends to express its opinion concerning those elected officials and their votes, as well as the meaning and implication of their votes. (*Id.*)

MRTLA PAC, meanwhile, designed and paid for mailings and radio spots in the last election cycle and plans to do so again in the 2012 election cycle. (VC ¶ 50.) It wants to produce printed express advocacy and issue advocacy communications that will mention candidates for election in Montana in 2012 and their votes on various issues that are important to MRTLA PAC. (*Id.*) Specific planned

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-20-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

examples of express advocacy that mention voting records include printed ads criticizing current State Senators Larry Jent and David Wanzenried, both of whom are running for the Democratic nomination for governor in 2012. (VC ¶ 51.) MRTLA PAC wants to draw attention to the fact that both Senators Jent and Wanzenried voted against the "parental notification" and "unborn victims" bills, and urge the electorate to vote against them for governor. (*Id*.) A specific planned example of issue advocacy that mentions voting records is an ad in local newspapers listing all the candidates that it considers to be "pro-life" and thanking them for their votes on legislation that is crucial to the pro-life cause. (VC ¶ 52.)

Plaintiff Sweet Grass Council for Community Integrity ("SGCCI") is a nonpartisan, unincorporated association made up of citizens who are concerned about the expansive growth of government. (VC ¶ 55.) It has no board or elected officers, but acts through an unelected council. (*Id*.) SGCCI wants to educate the public about the need to reestablish and protect their constitutional rights and interests. (VC ¶ 56.) It seeks to do this by advocating for smaller government. Among the activities SGCCI conducts are: (1) hosting public meetings where issues of interest can be discussed, (2) organizing issue education campaigns, (3) communicating with other interested groups and with its members, and (4) participating and testifying at meetings held by public bodies, such as the

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-21-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Montana legislature. (*Id*.)

SGCCI is an association of citizens that seeks to promote its mission and to educate the public by researching and gathering facts on public policy matters and reporting those facts to the public at large. (VC ¶ 57.) In this role, it acts as a citizen-lobbyist by taking positions on political issues and expressing its carefully researched and well-reasoned opinions of both legislation and also elected officials and their votes on matters important to SGCCI. (*Id*.) It does does not engage in electioneering, and does not send out express advocacy communications. (VC ¶ 58.) SGCCI does not endorse candidates or parties and does not contribute to candidates for political office. (*Id*.) Rather, SGCCI confines its political speech to genuine issue advocacy. (*Id*.)

In 2010, two of the members of SGCCI sent a letter to Sweet Grass County residents that mentioned Representative John Esp, a Republican representing House District 61, Big Timber, Montana. (VC ¶ 59.) The letter criticized Mr. Esp for mischaracterizing his then-primary opponent's religion. (*Id*.) Mr. Esp responded by threatening to file a complaint against the two members with the Montana Commissioner of Political Practices. (*Id*.) As a result of these threats, SGCCI is now very aware that it and its members can be accused (and potentially convicted) of violating Montana law just for engaging in political speech. (VC ¶

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-22-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

60.) SGCCI is concerned that the Commissioner of Political Practices' office can be used by people who disagree with a speaker's message as a forum for political pay back and harassment. (*Id*.) SGCCI is particularly concerned that the disclaimer requirement and the false statement law might be used to harass it and its members if SGCCI continues to speak about candidates and their voting records, or otherwise discusses issues that might be judged as relevant to the issues of the campaign. (*Id*.)

American Tradition Partnership, MRTLA PAC, and SGCCI each reasonably believe that their communications may be judged as "advocating for the success or defeat of a candidate," and so would be subject to the disclaimer requirement prescribed by MCA Section 13-35-225. (VC ¶ 61.) Plaintiffs American Tradition Partnership and MRTLA PAC object to the disclaimer requirement which compels their speech but plan to continue publishing their opinions. (VC ¶ 62.) Plaintiff SGCCI would like to continue taking positions on candidates and their voting records and publishing those opinions in written letters and other communications. (VC ¶ 63.) However, SGCCI will no longer publish communications, written or otherwise, criticizing candidates or their voting record so long as the disclaimer requirement remains in effect. (*Id*.) SGCCI does not want to take the risk that its communications will be judged to run afoul of the disclaimer requirement, nor

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-23-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

subject itself and its members to the possible penalties that can be imposed by the law. (*Id.*) SGCCI would continue to publish its carefully researched and well-reasoned opinions on candidates and their voting records but for the disclaimer requirement and the penalties imposed by it. (*Id.*)

American Tradition Partnership and MRTLA PAC plan to issue their printed issue advocacy communications prior to 60 days before a general election and 30 days before a primary (the "60/30 days window"). (VC ¶¶ 46, 52.) They also may issue printed issue advocacy communications within the 60/30 days window. (*Id.*)

## F.    Facts Concerning Montana's False Statement Law.

Montana law also makes it "unlawful for a person to misrepresent a candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false." MCA § 13-37-131(1). In addition, "[i]t is unlawful for a person to misrepresent to a candidate another candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false." MCA § 13-37-131(2). These provisions are hereafter referred to as the "false statement law".

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-24-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

American Tradition Partnership engages in direct citizen lobbying, in which it takes positions on political issues and publishes its carefully researched and well-reasoned opinion of both legislation and also elected officials and their votes on matters important to American Tradition Partnership. (VC ¶ 44.) It wants to produce printed issue advocacy communications prior to the 2012 general election that will educate the public concerning incumbents' votes on various bills that either were, or were not, consistent with American Tradition Partnership's philosophy of responsible development and management of land, water, and natural resources. (VC ¶ 46.) These issue ads will express American Tradition Partnership's opinion concerning those elected officials and their votes, as well as the meaning and implication of their votes. (*Id*.)

MRTLA PAC engages in political speech and association by supporting and opposing candidates with express advocacy ads (that is, ads that call on the electorate to vote for or against specific candidates) that mention candidates' voting records. (VC ¶ 48.) In addition, MRTLA PAC also fulfills its connected organization's purpose by engaging in direct citizen lobbying through its issue advocacy mailings and radio spots that mention candidates and discuss their voting records on bills that touch on life-issues. (VC ¶ 49.) When it does so it takes positions on political issues and publishes its carefully researched and well-

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-25-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

reasoned opinion of elected officials and their votes on matters important to Right to Life Montana. (*Id.*)

MRTLA PAC's specific planned examples of express advocacy that mention voting records include printed ads criticizing current State Senators Larry Jent and David Wanzenried, both of whom are running for the Democratic nomination for governor in 2012. (VC ¶ 51.) MRTLA PAC wants to draw attention to the fact that both Senators Jent and Wanzenried voted against the "parental notification" and "unborn victims" bills, and urge the electorate to vote against them for governor. (*Id.*)

MRTLA PAC's specific planned example of issue advocacy that mention voting records is an ad in local newspapers listing all the candidates that it considers to be "pro-life" and thanking them for their votes on legislation that is crucial to the pro-life cause. (VC ¶ 52.)

SGCCI has published its opinion of candidates in the past and would like to do so in the future. (VC ¶¶ 59, 63.)

American Tradition Partnership, MRTLA PAC, and SGCCI recognize that others may disagree with the positions they take on political issues and the opinions they publish regarding candidates, the meaning of candidates' voting records, and other issues relating to candidates. (VC ¶ 61.) They therefore reason-

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-26-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

ably believe that their communications could be judged to be a misrepresentation of a candidate's public voting record, or some other matter that is relevant to the issues of the campaign, and so may subject them to investigation and civil action brought by the Commissioner of Political Practices or a county attorney, as provided for by MCA Section 13-37-131(4). (*Id.*)

Plaintiffs American Tradition Partnership and MRTLA PAC object to requirements and prohibitions of these laws but plan to continue to publish their opinions. (VC ¶ 62.) SGCCI wants to continue taking positions on candidates and their voting records and publishing those opinions in written letters and other communications. (VC ¶ 63.) However, SGCCI will not publish any additional opinions about candidates, their voting records, or anything else that it believes might be judged to be "relevant to the issues of a campaign" so long as the false statement law remains in effect. (*Id.*) SGCCI does not want to take the risk that its communications will be judged to run afoul of the false statement law, nor subject itself and its members to the possible penalties that can be imposed by the law. (*Id.*) SGCCI would continue to publish its carefully researched and well-reasoned opinions on candidates and their voting records, as well as other issues concerning candidates,  but for the false statement law and the penalties it imposes. (*Id.*)

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-27-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

# Argument

## Standard of Review

Plaintiffs seeking preliminary injunctions must demonstrate (1) likely merits success; (2) irreparable harm; (3) favorable equitable balance; and (4) public-interest service. *Thalheimer v. City of San Diego*, __F.3d__, 2011 WL 2400779 at *3 (9th Cir. 2011) (*quoting Winter v. Natural Res. Def. Council,* 555 U.S. 7, 24–25 (2008)). In First Amendment challenges, once likely merits success is established the other elements follow. *Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 973-74 (9th Cir. 2002).

## Preliminary Injunction Standard

For preliminary injunctions "[i]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer*, 2011 WL 2400779 at *4. Unsupported opinions and "hypothetical situations not derived from any record evidence or governmental findings" are not sufficient to support laws depriving citizens of First Amendment rights. *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 653-54 (9th Cir. 2007) ("*Citizens*"). Rather, Government must prove with evidence that its laws are necessary and satisfy

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-28-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

scrutiny. *Id*; *Jacobus v. Alaska*, 338 F.3d 1095, 1109 (9th Cir. 2003). It is reversible error for district courts to find Government meets its burden when it does not present evidence of its interest in its law. *Citizens*, 474 F.3d at 653.

## I. The Plaintiffs Demonstrate Likely Merits Success.

**A.    Montana's Individual and PAC Contribution Limits Are Unconstitutional.**

Montana limits contributions from individuals and political action committees ("PACs") to candidates as follows:

> (1)    $600 for candidates for Governor and Lieutenant Governor;

> (2)    $300 for candidates for Attorney General, Secretary of State, State Auditor, Superintendent of Public Instruction, Supreme Court Justice, and Clerk of the Supreme Court; and,

> (3)    $160 for candidates for State Senate, State House, and District Judge.

MCA §§ 13-37-216(1), (3), (5).

The contributor-plaintiffs want to make contributions above these limits to their chosen candidates. And the candidate-plaintiff wants to solicit and accept contributions above these limits. But Montana law prohibits them.

Practically speaking, contribution limits are often incumbency-protection

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-29-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

tools. As the Supreme Court recognized, limits that are too low may "magnify the advantages of incumbency to the point where they put challengers to a significant disadvantage." *Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (plurality opinion). It is easy to understand why when one considers "the advantages of incumbency," which provide tremendous name-recognition from the free publicity and perks that come from being in office. Incumbents' voting record and stance on the issues are often well-known in their districts, and they frequently enjoy the ability to send mailings highlighting their legislative agenda free-of-charge to their constituents. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 922 (1995) (Thomas, J., dissenting). While enjoying these advantages, legislatures pass contribution limits that "can prevent challengers from spending more . . . to overcome their disadvantage in name recognition." *Id*.

As a result of the advantages of incumbency, those running to retain their office frequently need less money than challengers do to run effective campaigns. Challengers, however, must raise significantly more money than incumbents just to catch up to the name-recognition their incumbent-opponents possess. This is difficult for challengers even with robust limits because incumbents generally find it easier to persuade people to contribute to their campaigns. *Clark v. Valeo*, 559 F.2d 642, 63-64 (D.C. Cir. 1977) (Spottswood, J, dissenting). Consequently, when

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-30-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

limits are set too low, "only a desire to protect incumbents can explain them." *Landell v. Sorrell*, 406 F.3d 159, 173 (2d Cir. 2005) (Walker, Chief Judge, dissenting).

Whether limits are merely an incumbency-protection tool is just one concern raised by low limits. More significant are the primary First Amendment concerns: limits that are "too low" and "too strict" impermissibly infringe First Amendment free speech and association rights and so are impermissible. *Randall*, 548 U.S. at 248 and 262. Montana's limits raise all these problems. Because Montana's limits on contributions from individuals and PACs to candidates are too low to survive constitutional scrutiny, this Court should find them unconstitutional.

1.      **The Limits Are Subject to Strict Scrutiny, Which They Fail.**

a.      **Strict Scrutiny Applies.**

Contributions are both political speech and association. *Randall*, 548 U.S. at 246; *Buckley*, 424 U.S. at 14-15. The Supreme Court has called contributions "symbolic" speech and "general expression[s] of support," *Buckley*, 424 U.S. at 21, and explained that contributions "lie closer to the edges than to the core of political expression[,]" *FEC v. Beaumont*, 539 U.S. 146, 149 (2003). But the Court has always recognized that contributions are political speech.

Traditionally, contribution limits were subject to intermediate scrutiny,

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-31-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

requiring Government to prove its limits are "closely drawn" to a "sufficiently important interest" and "avoid unnecessary abridgment of associational freedoms." *Jacobus v. Alaska*, 338 F.3d 1095, 1109 (9th Cir. 2003). However, the Supreme Court recently ruled that laws that burden political speech are subject to strict scrutiny, *Citizens United* , 130 S. Ct. at 898, which requires that Government prove its law is "narrowly tailored" to a "compelling interest," *id*., and employs "the least restrictive means" to further the interest. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006); *MCFL*, 479 U.S. at 262.

The Ninth Circuit has twice considered contribution limits since *Citizens United* was decided. In *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684 (9th Cir. 2010), the court recognized it is unclear whether, following *Citizens United*, contribution limits should be subject to strict or intermediate scrutiny. *Id*. at 692 n.4. But because the challenged limits were unconstitutional under either scrutiny, it did not reach the question. *Id*. at 693. In *Thalheimer*, 2011 WL 2400779 at *12 n.4, the court applied intermediate scrutiny to challenged limits because the plaintiffs conceded that standard was proper. The Ninth Circuit's guidance as to the proper level of scrutiny for contribution limits is therefore limited to *Long Beach*'s acknowledgment that the answer is "unclear."

Other courts, however, have ruled that strict scrutiny applies to post-

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-32-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*Citizens United* contribution limit challenges. One famously called *Citizens United*

"a game changer" as it applied strict scrutiny to contribution limits, finding them

unconstitutional. *Family PAC v. Reed*, No. C09-5662RBL, at 43, 48 (D. Wash.

September 1, 2010), *appeal docketed*, Nos. 10-35832, 10-35893 (9th Cir. Sept. 17,

2010) (*attached as* Ex. 1). Another recently applied strict scrutiny to a challenged

contribution limit, citing *Citizens United*, and granted a preliminary injunction.

*Carey v. FEC*, __F.Supp.2d__, 2011 WL 2322964 at *4 and *7 (D.D.C. 2011).

This Court should likewise follow *Citizens United*'s rule and apply strict scrutiny

to Montana's contribution limits.

### b.    The Limits Fail Strict Scrutiny Analysis.

To survive strict scrutiny, contribution limits must be "narrowly tailored" to

a "compelling interest" and employ the "least restrictive means." *Citizens United*,

130 S.Ct. at 898; *Gonzales*, 546 U.S. at 429. Only the interest in preventing quid-

pro-quo financial corruption, or its appearance, will support restrictions on

political speech. *Citizens United*, 130 S.Ct. at 901, 909. And the anticorruption

interest is limited to the "large contributions" that might be given for a political

quid-pro-quo. *Id*. at 901. But Montana's limits do not target only *large* contribu-

tions that can lead to quid-pro-quos, *id*, but small contributions as well. The

Supreme Court ruled in 2000 that a $1075 contribution limit was constitutional

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-33-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

because it adequately addressed Government's anticorruption interest. *Nixon v.*

*Shrink Missouri Government PAC*, 528 U.S. 377, 382-83 (2000).[3] Montana's

limits are lower than necessary to curb corruption. They therefore do not employ

the least restrictive means and so are not narrowly tailored. The limits are there-

fore unconstitutional.

### 2.   Even If Intermediate Scrutiny Applies, the Limits Fail.

The individual and PAC contribution limits are unconstitutional even under

intermediate scrutiny, which requires that limits be "closely drawn" to a "suffi-

ciently important interest" and "avoid unnecessary abridgment of associational

freedoms." *Jacobus*, 338 F.3d at 1109 (*quoting Buckley*, 424 U.S. at 25).

Montana's limits cannot satisfy this standard.

The *Jacobus* decision is informative. It concerned the constitutionality of a

$5,000 limit on contributions from individuals to political parties. *Id*. at 1100-

01.The Ninth Circuit recognized that, while intermediate scrutiny "does not

require 'the least restrictive alternative,'" *Id*. at 1115, it does require Government

to "avoid unnecessary abridgment" of the First Amendment freedoms implicated

by contribution limits, *id*. at 1109. Applying that standard to the $5,000 limit at

---

[3]The $1,075 contribution limit upheld in *Nixon* is equivalent to $1,410.63
today. United States Bureau of Labor Statistics, CPI Inflation Calculator, *available
at* http://www.bls.gov/data/inflation_calculator.htm (last visited June 21, 2011).

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-34-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

issue before it, the *Jacobus* court found the limit was "well within [the] limits" previously approved by the Supreme Court. *Id.* at 1117. The challenged limit therefore did not unnecessarily abridge political speech and association and so satisfied the "closely drawn" requirement. *Id.*

The opposite result occurred in *Randall*, 548 U.S. 230, which held Vermont's $200 to $400 contribution limits unconstitutional under intermediate scrutiny. *Id.* at 238. The Court explained that "the amount, or level" of contribution limits "could make a difference" in determining whether they were closely drawn. *Id.* at 247. Indeed, "contribution limits might sometimes work more harm to protected First Amendment interests than their anticorruption objectives could justify." *Id.* at 247-48. In short, there is a "lower bound" below which contribution limits must fail scrutiny. *Id.* at 248. Applying these considerations, the *Randall* Court found the challenged limits unconstitutional. *Id.* at 262. They were "well below" the $1,000 limit the Court upheld in *Buckley*. *Id.* at 250. Adjusted for inflation, the $400 limit was worth less than one-tenth of the $1,000 limit the *Buckley* Court upheld. *Id.* Because Vermont offered no "special justification" that would warrant such low limits, *id.* at 261, the limits were "too low and too strict" to survive intermediate scrutiny. *Id.* at 248 and 262.

Like the limits at issue in *Randall*, Montana's limits are "well below" the

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-35-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

$1,000 limit upheld in *Buckley*. Adjusted for inflation to 1976 dollars, Montana's limit for contributions to candidates for Governor is but $151.09, or fifteen percent of the limit upheld in *Buckley*.[4] The $300 limit for contributions to candidates for Attorney General, Secretary of State, and the other state-wide offices, meanwhile, is only $75.54 in 1976 dollars, while the $160 limit for candidates for State Senate, State House, and District Judge is only $40.29.[5] Just like Vermont, Montana has no "special justification" that can support such drastically low limits. Even under the more complaisant intermediate scrutiny review, these limits are not closely drawn to the anticorruption interest. They do not target the *large* contributions that can lead to quid-pro-quo corruption, *see Citizens United*, 130 S.Ct. at 901, but sweep too broadly, reaching contributions that are "well below" the level at which pay-to-play might occur. Montana's limits therefore fail to "avoid unnecessary abridgment" of First Amendment freedoms required under intermediate scrutiny analysis. *See Jacobus*, 338 F.3d at 1115; *Buckley*, 424 U.S. at 25. They are overinclusive, restricting more First Amendment activity than is justified by the anticorruption interest. Thus, even under intermediate scrutiny, Montana's

---

[4]U.S. Bureau of Labor Statistics, CPI Inflation Calculator, *available at* http://www.bls.gov/data/inflation_calculator.htm (last visited June 21, 2011).

[5]*Id*.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-36-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

limits on individual and political committee contributions to candidates are unconstitutional.

**B.   Montana's Political Party Contribution Limits Are Unconstitutional.**

Montana law also imposes aggregate limits on contributions from political parties to their candidates. Currently, the per-election political party aggregate contribution limits are:

> (1)   $21,600 to candidates for Governor or Lieutenant Governor;

> (2)   $7,800 to candidates for Attorney General, Secretary of State, State Auditor, Superintendent of Public Instruction, Supreme Court Justice, and Clerk of the Supreme Court;

> (3)   $3,100 to candidates for the Public Service Commission;

> (4)   $1,250 to candidates for the State Senate; and

> (5)   $800 to candidates for the State House.

MCA § 13-37-216(3).

Because the limits are *aggregate* limits, they limit the amount all parties *together* may contribute to a candidate. So, for example, if the Beaverhead County Republicans make an $800 contribution to a candidate for House Representative, the Lake County Republicans cannot make any contribution to that candidate—even though they want to, and even though they are a separate entity, with

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-37-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

different members, than the Beaverhead County Republicans. Similarly, once Plaintiff John Milanovich receives $800 from his local Republican Party, he may not accept any contribution from any other party, including the State Republican Party. This infringes the right of association within political parties, as well as the parties' right to engage in speech and association with their candidates.

### 1.     The State Has No Interest In Its Limits.

Political parties exist "for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997). If parties were unable to promote candidates who espouse the political views of their members, representative democracy would be "unimaginable." *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000). Limits on parties' ability to make contributions to their candidates must therefore be carefully evaluated. *Landell v. Sorrell*, 118 F. Supp. 2d 459, 486 (D. Vt. 2000). Historically, these limits were subject to intermediate scrutiny. *FEC v. Colorado Republican Federal Campaign Committee*, 533 U.S. 431, 456 (2001) ("*Colorado-II*"). However, because contributions involve both association and political speech, *Randall*, 548 U.S. at 246, and the Court recently ruled that laws that burden political speech are subject to strict scrutiny, *Citizens United*, 130 S. Ct. at 898, the Plaintiffs assert that strict scrutiny review is appropriate for contribution limits. *See supra*, Part I.A.1.a.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-38-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Regardless, the aggregate party contribution limits are unconstitutional under either level of scrutiny because Montana has no interest in them. *Citizens United* ruled that the *only* constitutionally cognizable interest in restricting political speech and association is the interest in preventing quid-pro-quo corruption. 130 S.Ct. at 901, 909. But parties cannot corrupt their candidates; the very reason parties support candidates is because the candidates *already* agree with the party's philosophy and goals. As the Supreme Court explained, "the basic object of a political party" is to "elect whichever candidates the party believes would best advance its ideals and interests." *Randall*, 548 U.S. at 257-58. So parties support candidates who agree with their political philosophy, *Anderson v. Celebrezze*, 460 U.S. 780, 821 (1983) (Rehnquist, J., dissenting), and will "make the party's message known and effective," *Colorado Republican Federal Campaign Committee v. FEC*, 518 U.S. 604, 628 (1996) ("*Colorado-I*") (Kennedy, J., concurring in the judgment and dissenting in part).

Political parties cannot corrupt their candidates by buying their votes: the candidates *already* agree with the party, which is why it supports them. In other words, elected officials regularly vote in accordance with their party's political philosophy because they share the philosophy, not because their party gave them money. It is simply preposterous to suppose that political parties corrupt their own

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-39-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

candidates by making contributions to them.

The Supreme Court appeared to recognize this when it upheld the federal limits on party contributions in *Colorado-II*. The Court never suggested that contributions from parties corrupt their candidates. Rather, the Court relied on an anticircumvention interest—i.e., preventing individuals circumventing individual contribution limits by using the party as a conduit—which the Court ruled was a valid theory of corruption. 533 U.S. at 465. But the Supreme Court recently recognized that political speech regulations are *always* underinclusive to the anticircumvention interest, *Citizens United*, 130 S.Ct. at 912, and regulations that are underinclusive fail scrutiny, *Republican Party of Minnesota v. White*, 536 U.S. 765, 780 and 788 (2002). There is therefore no constitutionally cognizable interest in limiting contributions to candidates. This Court should therefore find the aggregate party limits unconstitutional.

**2.    Even If the State Had An Interest, Its Limits Are Not Properly Tailored.**

Even if Montana could demonstrate that parties can corrupt their candidates, Montana would also have to demonstrate that its limits are properly tailored. Strict scrutiny requires Government to employ the least restrictive means. *Gonzales*, 546 U.S. at 429. And intermediate scrutiny requires Government to "avoid unnecessary

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-40-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

abridgment" of First Amendment freedoms. *Jacobus*, 338 F.3d at 1115. Under either scrutiny, Montana must demonstrate its limits are needed to curb corruption.

But the danger of corruption is only present with *large* contributions. *Citizens United*, 130 S.Ct. at 901; *Buckley*, 424 U.S. at 25. It is impossible to imagine, for instance, that a candidate for State House will be corrupted by his party's $900 contribution such that an $800 limit is needed. Nor is it reasonable to think that the same candidate will be corrupted by two county parties' contributions of $450 each. The anticorruption interest simply cannot support Montana's low, aggregate limits on party contributions.

The Supreme Court's *Randall v. Sorrell* decision, striking Virginia's low limits on party contributions, illustrates the point. The Court previously noted that a political party "combines its members' power to speak by aggregating contributions and broadcasting messages more widely than individual contributors generally could afford to do, and the party marshals this power with greater sophistication than individuals generally could, using such mechanisms as speech coordinated with a candidate," thereby making their members' political advocacy more effective. *Colorado II*, 533 U.S. at 453. But when political party contributions are subjected to severe limits, as in *Randall* and also here in Montana, the important role that parties play is imperiled as five constitutional problems occur. **First**, low

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-41-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

limits "reduce the voice of political parties to an undesirable, and constitutionally impermissible, whisper." *Randall*, 548 U.S. at 259. **Second**, they "threaten[] harm to a particularly important political right, the right to associate in a political party." *Id*. at 256. **Third**, they discourage small-money donors from contributing to political parties, because the donors recognize that the party is not able to effectively combine party members' resources for robust speech. *Id*. at 257. **Fourth**, they "inhibit collective political activity" by preventing political parties from providing "meaningful assistance" to their candidates. *Id*. at 258. **Fifth**, low limits risk violating the First Amendment's requirement that limits on contributions not be so severe that they prevent candidates from amassing necessary resources to mount effective campaigns. *Id*. at 254.

So while Government may limit party contributions to their candidates if necessary to combat circumvention of valid individual contribution limits, *Colorado-II*, 533 U.S. 431, the limits must be robust enough to allow political parties to fulfil their unique function in our democracy, *Randall*, 548 U.S. 230. Robust, *constitutional* limits are best illustrated by the federal limits on party contributions upheld in *Colorado-II*. For the 2010 election, individuals could make contributions of $2,400 to Senate candidates, while national political parties

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-42-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

could make direct cash contributions of $42,600.[6] The contributions made by State and local Republican parties did not count against the national party limit,[7] as occurs with Montana's aggregate limits. Rather, the national parties may make their contributions regardless of what other branches of the party give. While state and local parties were generally subject to an aggregate $5,000 limit, they could each contribute $5,000 if they could demonstrate their independence from one another.[8] Plus, national political parties could make coordinated expenditures with their candidates, above the contribution limits, in amounts that ranged from $87,000 for candidates in Alaska and Delaware to $2,395,400 for candidates in California.[9] So the total amount national political parties could contribute to their candidates for Senate—no matter how much state and local parties contributed—ranged from $129,600 to $2,438,000, which is between 54 and 1,015 times the $2,400 that individuals could contribute. And state and local parties could still

---

[6] 2 U.S.C. 441a(h) (adjusted for inflation pursuant to 2 U.S.C. 441a(c)(1)(B)(i)). *See* "Contribution Limits for 2009-10," *available at* http://www.fec.gov/info/contriblimits0910.pdf (*last visited* July 29, 2010).

[7] *Id.*

[8] *Id.*

[9] 2 U.S.C. 441a(d)(3)(A) (adjusted for inflation pursuant to 2 U.S.C. 441a(c)(1)(B)(i)). *See* "Coordinated Party Expenditure Limits for 2010 Senate Nominees," *available at* http://www.fec.gov/info/charts_441ad_2010.shtml (*last visited* July 29, 2010).

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-43-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

give $5,000 to the same candidate.

Those are the robust limits upheld in *Colorado-II*.

Montana's aggregate party contribution limits, however, are not robust. Rather, they sink as low as $800 in the aggregate for candidates for the State House—a mere 5 times what individuals may contribute. Candidates for the Senate fare little better. Parties may only make aggregate contributions of $1,250 to them, which is less than 8 times the individual limit. While the party limits for other offices are slightly higher, none reach the robust heights that the Supreme Court required in *Colorado-II*. Rather, they are comparable to those struck in *Randall* and create the same five dangers that Court identified. They do not "avoid unnecessary abridgment" of First Amendment freedoms as required by even intermediate scrutiny, *see Jacobus*, 338 F.3d at 1115, let alone employ the least restrictive means as strict scrutiny demands, *see Gonzales*, 546 U.S. at 429. They are unconstitutional.

**C.    Montana's Ban On Corporate Contributions Is Unconstitutional.**

MCA Section 13-35-227 bans corporate general-fund contributions to candidates. It also bans candidates accepting general-fund corporate contributions. Under the logic of *Citizens United*, 130 S.Ct. 876, and *First National Bank of Boston v. Bellotti*, 435 U.S. 765 (1978), this ban is unconstitutional. Even if that

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-44-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

were not so, a ban on political speech is impermissible, *Citizens* 130 S.Ct. at 911,

and cannot pass constitutional scrutiny.

1. **The Ban Impermissibly Discriminates on the Basis of the Speaker's Corporate Identity.**

   a. **The First Amendment Forbids Speech Restrictions Based On Speakers' Identities.**

The First Amendment will not tolerate speech restrictions based on the

speaker's identity. Government is constitutionally forbidden to "restrict the speech

of some elements of our society in order to enhance the relative voice of others[.]"

*Buckley*, 424 U.S. at 48-49. Such censorship is "wholly foreign to the First Amend-

ment[.]" *Id.* at 49. Consequently, Government may not "distinguish[] among

different speakers, allowing speech by some but not others." *Citizens United*, 130

S. Ct. at 898. Nor may Government limit political speech of disfavored speakers,

*id.* at 899, including "those that have taken on the corporate form[,]" *id.* at 908.

Rather, "[t]he First Amendment protects speech and speaker, and the ideas that

flow from each." *Id.* at 907. This rule followed *Bellotti*'s holding that if political

speech cannot be restricted when an individual is the speaker, it cannot be re-

stricted simply because the speaker is a corporation. 435 U.S. at 776.

Contributions are political speech. *See supra* Part I.A.1.a. The First Amend-

ment does not permit Government to ban individuals' contributions. *Randall*, 548

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-45-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

U.S. at 248 and 262 (ruling that as contribution limits for individuals approach zero, they become "too low" and "too severe" to survive scrutiny and so are unconstitutional). It therefore is impermissible to ban corporate contributions on the sole basis of their corporate identity.

The Federal District Court for the Eastern District of Virginia recently recognized this principle when it struck the federal ban on direct corporate contributions. *U.S. v. Danielczyk*, __F. Supp.__, 2011 WL 2161794 (E.D. Vir. 2011), *pet. rh'g denied*, 2011 WL 2268063 (E.D. Vir. 2011), *appeal docketed*, 11-4667 (4th Cir. June 29, 2011). The court explained that the "logic" of *Citizens United* "is inescapable." 2011 WL 2161794 at *18. It ruled that "[i]f human beings can make direct campaign contributions within FECA's limits without risking *quid pro quo* corruption or its appearance, and if, in *Citizens United*'s interpretation of *Bellotti*, corporations and human beings are entitled to equal political speech rights, then corporations must also be able to contribute within FECA's limits." *Id*.

Similarly, the rule of *Buckley*, *Bellotti*, and *Citizens United* compels a finding that Montana's corporate contribution ban is unconstitutional because it discriminates against corporate speakers on the basis of their corporate identity, impermissibly restricting the speech of some elements of our society. The First Amendment cannot tolerate this. *Buckley*, 424 U.S. at 48-49; *Bellotti*, 435 U.S. at

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-46-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

776; *Citizens United*, 130 S. Ct. at 899. Because Montana's ban on direct corporate general-fund contributions engages in impermissible discrimination based on the identity of the speaker, it is unconstitutional.

### b.   *Beaumont* Does Not Bar Holding Montana's Ban Unconstitutional.

*FEC v. Beaumont*, 539 U.S. 146 (2003), is sometimes cited for the proposition that bans on direct corporate contributions are constitutional. However, *Beaumont* never considered whether such bans were constitutional. Rather, all *Beaumont* considered was whether MCFL-type advocacy corporations[10] must be exempted from generally applicable corporate contribution limits. *Beaumont*, 539 U.S. at 151. It ruled they did not. *Id*. at 149.

*Beaumont*'s procedural history is instructive. The respondent, a non-profit advocacy corporation known as North Carolina Right to Life ("NCRTL"), challenged 2 U.S.C. 441b(a)'s ban on corporate contributions only as applied to itself. *Beaumont v. FEC*, 137 F.Supp.2d 648, 650 (E.D.N.C. 2000). The district court held that no constitutionally cognizable interest supported banning advocacy corporations' contributions, *id*. at 656, and ruled the federal ban unconstitutional as applied to NCRTL, *id*. at 656-57.

---

[10]The description, *MCFL-type corporation*, refers to nonprofit, non-stock, non-business advocacy corporations. *MCFL*, 479 U.S. 238 (1986).

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-47-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

The FEC appealed. *Beaumont v. FEC*, 278 F.3d 261, 265 (4th Cir. 2002).

The Fourth Circuit agreed with the district court, holding that the First Amend-

ment required that advocacy corporations be exempted from Section 441b(a)'s ban

on direct corporate contributions. *Id.* at 275. The FEC petitioned for *certiorari*.

*Beaumont*, 539 U.S. at 151. The Court granted cert only as to whether advocacy

corporations must be exempted from the federal ban on contributions, *id.*, and that

was the only question the Court ruled on, *id.* at 149 ("We hold that applying the

prohibition to nonprofit advocacy corporations is consistent with the First Amend-

ment.").[11]

In reaching its decision, the *Beaumont* Court assumed, without deciding, the

constitutionality of the federal ban itself. But that assumption is dicta. Thus, even

---

[11]*Beaumont*'s holding was based on its belief that the PAC-option allowed
for corporate expressive activity. 539 U.S. at 162-63. But *Citizens* held that the
PAC-option cannot allow for corporate expressive activity. 130 S.Ct. at 897.
Further, *Beaumont* rested its decision on three interests, two of which were
invalidated, and one discredited, by *Citizens*. *Compare Beaumont*, 539 U.S. at 154
(antidistortion and shareholder-protection interests), *with Citizens*, 130 S.Ct. at
903-08 (invalidating antidistortion interest), 911 (invalidating shareholder-
protection interest). *Compare also Beaumont*, 539 U.S. at 155 (anticircumvention
interest), *with Citizens*, 130 S.Ct. at 912 (regulations are always underinclusive to
the anticircumvention interest). *Beaumont* thus rests on a now-rejected premise
(that PACs can engage in expressive activity for the organization that creates
them) and discredited reasoning.
    Plaintiffs assert that *Beaumont* was wrongly decided and should be
reconsidered and overruled. They therefore preserve this argument for appeal.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-48-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

though *Beaumont* at times seems to paint with a broad brush, its holding is quite limited and may be summarized as follows: where a limit on corporate contributions applies, the First Amendment does not require that MCFL-type corporations be exempted.

*Beaumont* does not control the instant case because the plaintiffs do not request an exemption from Montana's ban on direct, general-fund corporate contributions. Rather, the plaintiffs challenge the constitutionality of the ban itself. *Beaumont* is therefore no bar to this Court ruling Montana's ban unconstitutional. *See Danielczyk*, 2011 WL 2161794 (finding *Beaumont* no bar to its ruling that the Section 441a(b)'s ban on direct corporate contributions is unconstitutional under *Citizens United*).

### 2. The Ban Is Not Properly Tailored and So Cannot Pass Scrutiny.

### a. Political Speech Bans Are Not Permissible.

Contributions are political speech. *Randall*, 548 U.S. at 246; *Buckley*, 424 U.S. at 14-15. Contribution *limits* are permissible (assuming they pass constitutional scrutiny) because limits still "permit[] the symbolic expression of support evidenced by a contribution." *Id*. at 21. But political speech may not be completely banned. *Citizens United*, 130 S.Ct. at 911. Consequently, laws that ban political speech, including *corporate* political speech, are unconstitutional. *Id*. (holding that

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-49-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

such laws are "not a permissible remedy"); *see also id*. at 913 (holding that the requirement that corporations make independent expenditures through PACs is unconstitutional).

Montana requires corporations to employ PACs to make contributions. But *Citizens United* ruled that PACs cannot speak for corporations because they are separate entities. *Id*. at 897-98. So laws requiring corporations to employ PACs to speak are "ban[s] on corporate speech notwithstanding the fact that a PAC created by a corporation can still speak." *Id*. at 897. Such bans are impermissible. *Id*. at 911. No matter what interest Montana seeks to address with *limits* on corporate contributions, "[a]n outright ban on corporate political speech during the critical preelection period is not a permissible remedy." *Id*. Montana's corporate contribution ban is therefore unconstitutional.

> **b.   Political Speech Bans Are Asymmetrical to the Anticorruption Interest.**

Laws that burden political speech must be properly tailored to a constitutionally cognizable interest to be constitutional. *Id*. at 898. The only interest in restricting political speech is the interest in preventing quid-pro-quo corruption or its appearance. *Id*. at 901, 909. Bans on political speech fail scrutiny because they are not properly tailored to the anticorruption interest. Rather, political speech

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-50-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

bans are "asymmetrical to preventing quid pro quo corruption[.]" *Id*. at 911. Thus, whether Montana's corporate contribution ban is evaluated under strict scrutiny, *see supra* at Part I.A.1.a., or intermediate scrutiny, *see supra* at Part I.A.2., it fails because it is not properly tailored. The ban cannot be "closely drawn" to Montana's "sufficiently important interest" in preventing corruption any more than it can be "narrowly tailored" to a "compelling interest." Its asymmetry to the anticorruption interest prevents it from being properly tailored no matter the level of scrutiny. *See Randall*, 548 U.S. at 248 and 262 (holding under intermediate scrutiny that as contribution limits approach zero they become "too low and too strict to survive First Amendment scrutiny"). *See also id*. at 262 (holding that extremely low contribution limits "burden First Amendment interests in a manner that is disproportionate to the public purposes they were enacted to advance."). Montana's corporate contribution ban is therefore unconstitutional because it cannot satisfy scrutiny.

**D.    Montana's Ban On Corporate Contributions To Independent Expenditure Committees Is Unconstitutional.**

MCA Section 13-35-337 bans corporate general-fund contributions to committees, including those making independent expenditures. It also bans committees accepting corporate general-fund contributions, including those

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-51-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

earmarked for independent expenditures. This ban is unconstitutional under *Citizens United*, 130 S.Ct. 876; *Long Beach*, 603 F.3d 684; and *Thalheimer*, 2011 WL 2400779.

The Supreme Court ruled in *Citizens United* that the presence of the corporate form is not in itself a corruption interest, nor does it give rise to corruption justifying regulation of First Amendment activity. *Citizens United*, 130 S.Ct. at 904-08. The Court explained that "if the First Amendment has any force," it must prohibit the government from banning "political speech simply because the speaker is an association that has taken on the corporate form." *Id*. at 904. Rather, the only constitutionally cognizable interest in restricting political speech is the anticorruption interest associated with large contributions to *candidates*. *Id*. at 901-02. No other interest supports restricting political speech. *id*. at 903-12.

Independent expenditures, however, do not give rise to corruption, *id*. at 909, even when made by corporations from their general funds, *id*. at 909, or by independent expenditure committees, *Long Beach*, 603 F.3d at 695. Therefore, there is no interest in limiting independent expenditures, including corporate general-fund independent expenditures, and all such limits are unconstitutional. *Citizens United*, 130 S.Ct. at 913; *Long Beach*, 603 F.3d at 695.

In *Long Beach*, the Ninth Circuit applied *Citizens United*'s reasoning to

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-52-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

strike limits on contributions to committees making independent expenditures.
The court recognized that limits on contributions to *candidates* may be supported
by an anticorruption interest. 603 F.3d at 696. But "[a]s one moves away from the
case in which a donor gives money directly to a candidate . . . the state's interest in
preventing corruption necessarily decreases." *Id.* (*quoting N.C. Right to Life  v.
Leake,* 525 F.3d 274, 291 (4th Cir.2008)). Independent expenditure committees
"do not coordinate or prearrange their independent expenditures with candidates,
and they do not take direction from candidates on how their dollars will be spent."
*Long Beach*, 603 F.3d at 696. Therefore, the anticorruption interest cannot support
limits on contributions to independent expenditure committees. *Id.* at 699. Such
limits are unconstitutional. *Id.*

Subsequent to the *Long Beach* decision, the Ninth Circuit issued its
*Thalheimer* decision. *Thalheimer* is directly on point because it considered a ban
on corporate contributions to independent expenditure committees, such is at issue
in this case. 2011 WL 2400779 at *5-9. The court explained that contributions to
independent expenditure committees cannot corrupt candidates because the
committees act independently of candidates. *Id.* at *9. There is therefore no
interest in limiting such contributions, even when the contributor is a corporation.
*Id.* Consequently, *Thalheimer* affirmed the district court's grant of preliminary

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-53-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

injunction against the law banning corporate contributions to independent expenditure committees. *Id*.

*Citizens United*, *Thalheimer*, and *Long Beach* are controlling. Montana's ban on corporate contributions to independent expenditure committees is unconstitutional.

### E.   Montana's Disclaimer Law Is Unconstitutional.

Montana law requires that all "printed election material" that includes information about a candidate's voting record must also include "a reference to the particular vote or votes upon which the information is based; a disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time; and a statement, signed as provided in subsection (3)(b), that to the best of the signer's knowledge, the statements made about the other candidate's voting record are accurate and true." MCA § 13-35-225(3)(a). (The "disclaimer requirement").

This disclaimer requirement is void for vagueness. It is also overbroad. And it is a content-based regulation of speech, but fails the required strict scrutiny review. The disclaimer requirement is therefore unconstitutional.

### 1.   Montana's Disclaimer Law Is Void For Vagueness.

Laws regulating speech must sufficiently define their terms that the bound-

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-54-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

ary between permissible and impermissible speech is clearly marked. *Buckley*, 424 U.S. at 41. Consequently, a statute is void for vagueness when it is not "sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998). *See also In re Doser*, 412 F.3d 1056, 1062 (9th Cir. 2005) (ruling that "[a] statute is vague if men of common intelligence must necessarily guess at its meaning and differ as to its application.").

Vague statutes are void for three reasons. First, "to avoid punishing people for behavior that they could not have known was illegal[.]" *Foti*, 146 F.3d at 638. Second, "to avoid subjective enforcement of the laws based on arbitrary and discriminatory enforcement by government officers[.]" *Id*. And third, "to avoid any chilling effect on the exercise of First Amendment freedoms." *Id*.

Montana's disclaimer requirement is vague in two ways. First, it does not define "closely related in time" and "the same issue" with specificity. Second, it relies on the appeal-to-vote test for determining what speech is subject to the disclaimer requirement. But that test is vague under *Citizens United*, 130 S.Ct. 876. Even if that is not so, it is vague for all but electioneering communications as defined in the Federal Election Campaign Act ("FECA"). *WRTL-II*, 551 U.S. at 474 n.7 (2007). And Montana's law impermissibly reaches communications that

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-55-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

are not electioneering communications as defined in the Federal Election Campaign Act, or FECA. *Compare* MCA § 13-35-225(1) *with* 2 U.S.C. § 434(f)(3)(A). It is void for vagueness for both those reasons.

### a.   "Closely Related in Time" and "the Same Issue" Are Not Defined.

The disclaimer requirement mandates that all "printed election material" that includes information about a candidate's voting record must also include "a disclosure of contrasting votes known to have been made by the candidate on the *same issue* if *closely related in time*[.]" MCA § 13-35-225(3)(a) (emphasis added). "Printed election material" is defined as including "[a]ll communications advocating the success or defeat of a candidate[.]" MCA § 13-35-225(1).

Plaintiffs American Tradition Partnership and MRTLA PAC each intend to make printed issue advocacy communications—that is, their speech will be about issues important to the electorate and will mention candidates, but will not encourage the electorate to vote for or against candidates. Their issue advocacy communications will, however, mention how various candidates voted on various issues. MRTLA PAC also plans for some printed communications that will expressly advocate for the election and defeat of candidates. Many of these printed communications will mention how various candidates voted on various issues.

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-56-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

They both plan to issue their printed issue advocacy communications prior to 60 days before a general election and 30 days before a primary (the "60/30 days window"). They also may issue their printed issue advocacy communications within the 60/30 days window.

American Tradition Partnership and MRTLA PAC reasonably believe that their communications may be judged to be "advocating the success or defeat of a candidate" and so fall within the disclaimer requirement. MRTLA PAC's express advocacy communications certainly will. They must therefore satisfy the disclaimer requirement by including "a disclosure of contrasting votes known to have been made by the candidate on the same issue if closely related in time[.]" MCA § 13-35-225(3)(a). Failure to do so subjects American Tradition Partnership and MRTLA PAC to various penalties including a possible misdemeanor conviction, MCA § 13-35-103, and also the requirement that they bring communications into compliance and withdrawing noncompliant communications from circulation, MCA § 13-35-225(5).

Neither American Tradition Partnership nor MRTLA PAC can possibly know what "closely related in time" means. Must they include disclaimers for votes that occurred six months ago? A year ago? Five years ago? Seven? Ten? Nobody knows how far back they must go because "closely related in time" is not

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-57-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

defined.

Nor can American Tradition Partnership, MRTLA PAC, or anyone else know precisely what "issues" trigger the disclaimer requirement. Even the qualifier, "same," does not really help. Suppose that MRTLA PAC criticizes a candidate for voting against a parental-notification law when a minor child is seeking an abortion. Is the "issue" parental-notification, or is it abortion? In other words, must MRTLA PAC report only the candidate's previous votes on prior manifestations of the parental-notification law? Or does MRTLA PAC's reporting obligations extend to votes on laws touching on the issue of abortion in general? Or suppose different speakers criticizes a candidate's vote to raise taxes on corporations. What is the "same issue" in such a situation? Is it only votes regarding tax increases on corporations? Or is the "same issue" taxes in general? Or might the "same issue" be the regulation of corporations, whether or not the proposed regulation includes a corporate tax?

Nobody knows which votes must be included in the disclaimer because the terms, "same issue" and "closely related in time" are not defined. Yet, failure to comply with the disclaimer requirement by including all votes on "the same issue" that are "closely related in time" subjects American Tradition Partnership, MRTLA PAC, and other speakers to penalties under law. This leads to the three

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-58-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

problems with vague laws identified by the Ninth Circuit Court in *Foti*, 146 F.3d

629. It creates the possibility that law will be subjectively enforced based on

"arbitrary and discriminatory enforcement," Plaintiffs and others will be punished

for "behavior that they could not have known was illegal," and that some will

forego speaking because of the uncertainty of how to comply with the law. *Id*. at

638. The disclaimer requirement is therefore void for vagueness.

> **b.    Montana's Reliance on the Appeal-to-Vote Test Renders
> the Disclaimer Requirement Vague.**

Montana law imposes the disclaimer requirement on all "printed election

material" that includes information about a candidate's voting record. "Printed

election material" is defined to include "[a]ll communications *advocating the

success or defeat* of a candidate, political party, or ballot issue through any

broadcasting station, newspaper, magazine, outdoor advertising facility, direct

mailing, poster, handbill, bumper sticker, internet website, or other form of general

political advertising[.]" MCA § 13-35-225(1) (emphasis added). Instead of

limiting the phrase, "advocating the success or defeat," to only those communica-

tions containing *Buckley*'s "words of express advocacy," 424 U.S. at 44 n.52, the

Commissioner of Political Practices states that communications may be "the

functional equivalent of express advocacy" when "the ad is susceptible of no

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-59-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

reasonable interpretation other than as an appeal to vote for or against a specific candidate." This reliance on the appeal-to-vote test renders the disclaimer requirement unconstitutionally vague.

> 1) **The Appeal-to-Vote Test Is Unconstitutionally Vague; And Even if Not, It May Only Be Applied to Electioneering Communications as Defined in FECA.**

A brief recitation of the Supreme Court's development of the appeal-to-vote test will be helpful for understanding why Montana's application of it is constitutionally impermissible. In *Buckley*, 424 U.S. 1, the Supreme Court confronted a First Amendment challenge to certain disclosure requirements for expenditures. In order to avoid vagueness problems, *id*. at 44, the Court limited the definition of "expenditure" to "reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate [and that are] directed precisely to that spending that is unambiguously related to the campaign of a particular federal candidate[,]" *id*. at 80. The Court also ruled that such express advocacy is indicated by the presence of "communications containing express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" *Buckley*, 424 U.S. at 44 n.52. *Buckley* ruled that such "magic words" were definite enough to avoid vagueness challenges. *Id*. at 80.

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-60-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*Buckley* thus stands for the proposition that the "magic words" of express advocacy may be regulated by subjecting them to reporting and disclosure requirements, and also are sufficiently definite to avoid a vagueness challenge. This bright line "magic words" test stood as the law on this issue for over twenty-five years, until Congress amended FECA with the Bipartisan Campaign Reform Act, and the Supreme Court revisited the issue in *McConnell v. FEC*, 540 U.S. 93 (2003). In *McConnell*, the Court rejected the idea that "the First Amendment erects a rigid barrier between express advocacy and so-called issue advocacy" and determined that the "magic words" test was "functionally meaningless" as a limit of government reach because persons and organizations could avoid reporting simply by not using those particular words. *Id*. at 192. Then, finding that the governmental interests articulated in *Buckley* applied in full to the new provisions of FECA requiring reporting and disclosure of expenditures for ads that "are intended to influence voters' decisions and have that effect," the Court expanded the legitimate sweep of such requirements to reach the "functional equivalent of express advocacy." *Id*. at 206. In other words, *McConnell* upheld FECA's reporting and disclosure requirements as a valid exercise of government regulatory authority "to the extent that" the electioneering communication ads to be regulated "are the functional equivalent of express advocacy." *Id*. The *McConnell* Court also

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-61-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

stated that the definition of "electioneering communication" was not unconstitutionally vague. *Id*. at 103 (electioneering communication definition is "both easily understood and objectively determinable.").

The Supreme Court refined the definition of "functional equivalent of express advocacy" four years later in *WRTL-II*. Addressing an as-applied challenge to the electioneering communication provision that was upheld facially in *McConnell*, Chief Justice Roberts' opinion of the Court[12] recognized that *McConnell* "did not explain that it was adopting a particular test for determining what constituted the 'functional equivalent' of express advocacy." *WRTL-II*, 551 U.S. at 466. Accordingly, Chief Justice Roberts held that "a court should find that an ad is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a

---

[12]Chief Justice Roberts was joined only by Justice Alito in Parts III and IV of the opinion. Justice Scalia filed a separate opinion, joined by Justices Kennedy and Thomas, concurring in part and concurring in the judgment. Specifically, although Chief Justice Roberts and Justice Alito saw "no occasion to revisit" *McConnell*, *WRTL-II*, 551 U.S. at 476 n.8, Justices Scalia, Kennedy, and Thomas nevertheless expressed a desire to overrule its "functional equivalent" holding as unconstitutionally vague. *Id*. at 504 (Scalia, J., concurring in part and concurring in the judgment). Accordingly, Parts III and IV constitute binding portions of the opinion. *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'") (*citing Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)).

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-62-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

specific candidate." *Id*. at 469–70.

Although Chief Justice Roberts, joined by Justice Alito, saw "no occasion to revisit" *McConnell*, *id*. at 476 n.8, the three-judge concurrence, authored by Justice Scalia, wanted to overrule *McConnell*'s "functional equivalent" holding as unconstitutionally vague. *Id*. at 504 (Scalia, J., concurring in part and concurring in the judgment). Justice Scalia argued that an appeal-to-vote test "ultimately depend[s] . . . upon a judicial judgment . . . concerning 'reasonable' or 'plausible' import that is far from certain, that rests upon consideration of innumerable surrounding circumstances which the speaker may not even be aware of, and that lends itself to distortion by reason of the decision maker's subjective evaluation of the importance or unimportance of the challenged speech." *Id*. at 493 (Scalia, J., concurring in part and concurring in the judgment). In attempting to address these vagueness concerns, Chief Justice Roberts stressed that the appeal-to-vote test was "only triggered if the speech meets the bright-line requirements of FECA [refer-ring to the law's definition of electioneering communication]." *Id*. at 474 n. 7. In other words, under *WRTL-II*, the appeal-to-vote test may only be constitutionally applied to speech that falls within FECA's "electioneering communication" definition, which was upheld in *McConnell* as facially valid. *Id*. If the speech is not an electioneering communication as defined in FECA, the appeal-to-vote test

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-63-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

is not constitutionally permissible under *WRTL-II*, because it suffers from vague-

ness problems when applied to all other speech.

The Supreme Court's recent *Citizens United* decision seems to have ren-

dered the appeal-to-vote test always unconstitutionally vague. Although *Citizens*

*United* holds that an electioneering communication as defined in FECA passes the

appeal-to-vote test, 130 S.Ct. at 889-90, the question of whether electioneering

communications as defined in FECA pass the appeal-to-vote test no longer affects

whether government may regulate them. *Compare WRTL-II*, 551 U.S. at 457,

469-70, 474 n.7, *with Citizens United*, 130 S.Ct. at 889-90, 912-13, 915. *WRTL-II*

held that government may ban electioneering communications—and implied that

government may otherwise regulate them, *see* 551 U.S. at 457, 465, 471, 476-77,

477, 478, 478-79, 479, 480, 481—only when they pass the appeal-to-vote test, *id*.

at 457, 469-70, 474 n.7. But *Citizens United* holds that regardless of whether

electioneering communications pass the test, government may not ban them, 130

S.Ct. at 889-90, 911-13, when made by persons other than foreign nationals, *see*

*id*. at 911 (*citing* 2 U.S.C. § 441e). And regardless of whether electioneering

communications as defined in FECA pass the test, government may, subject to

further inquiry, *see, e.g.*, *id*. at 915-16 (giving an example of when disclosure is

unconstitutional), have the power to regulate them by requiring

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-64-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

non-political-committee reporting, *Id*. at 915 (upholding non-political-committee reporting).

Since the appeal-to-vote test applied only to electioneering communications as defined in FECA, *WRTL-II*, 551 U.S. at 474 n.7; *see also North Carolina Right to Life*, 525 F.3d at 282 (*citing WRTL-II*, 127 S.Ct. 2652, 2667 (2007)), followed in *National Right to Work Legal Def. & Educ. Found., Inc. v. Herbert*, 581 F. Supp.2d 1132, 1150 (D. Utah 2008), it no longer serves any constitutional purpose. *Citizens United* removes the appeal-to-vote test as a constitutional limit on government power.

All that remains of the appeal-to-vote test is the conclusion that the test is unconstitutionally vague not only vis-à-vis FECA electioneering communications but also vis-à-vis other speech. *See WRTL-II*, 551 U.S. at 492-94 (Scalia, J., concurring in part and concurring in the judgment). Here is why. It lacks "the degree of clarity necessary to avoid the chilling of fundamental political discourse[.]" *Id*. at 493. It "provides ample room for debate and uncertainty" about its meaning. *Id*. The appeal-to-vote test:

> ultimately depend[s] . . . upon a judicial judgment (or is it—worse still—a jury judgment?) concerning "reasonable" or "plausible" import that is far from certain, that rests upon consideration of innumerable surrounding circumstances which the speaker may not even be aware of, and that lends itself to distortion by reason of the decisionmaker's

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-65-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

> subjective evaluation of the importance or unimportance of the challenged speech. In this critical area of political discourse, the speaker[s] cannot be compelled to risk felony [or other] prosecution with no more assurance of impunity than [their] prediction that what [t]he[y] say[] will be found susceptible of some "reasonable interpretation other than as an appeal to vote for or against a specific candidate." Under these circumstances, "many persons, rather than undertake the considerable burden (and sometimes risk) vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (citation omitted).

*WRTL-II*, 551 U.S. at 493-94 (Scalia, J., concurring in part and concurring in the judgment) (brackets in original omitted).

So *Citizens United* does not just remove the appeal-to-vote test as a constitutional limit on government power.  It renders the test unconstitutionally vague. How is anyone—including a speaker or a law enforcer—to know whether speech is "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate," which is the test for whether Montana's disclaimer requirement applies? Such a standard is "impermissibly vague[.]" *WRTL-II*, 551 U.S. at 492 (Scalia, J., concurring in part and concurring in the judgment).

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-66-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

**2)** **Montana's Disclaimer Requirement Reaches More Speech Than Electioneering Communications as Defined in FECA.**

Even if it is not correct that, following *Citizens United*, the appeal-to-vote test is always vague, under *WRTL-II* it is vague when applied to more speech than electioneering communications as defined in FECA. *WRTL-II*, 551 U.S. at 474 n.7. Montana's disclaimer requirement extends to all printed communications that are "the functional equivalent of express advocacy," which the Commissioner identifies as those which are "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." The Commissioner has thus incorporated Chief Justice Roberts' language from *WRTL-II*. But Montana's disclaimer requirement is not limited to electioneering communications as defined in FECA, as *WRTL-II* required.

Electioneering communications as defined in FECA are (1) broadcast, cable, or satellite communications that (2) refer to a clearly identified candidate, (3) are made within 60 days before a general, special, or runoff election or 30 days before a primary or preference election, and (4) is targeted to the relevant electorate. 2 U.S.C. § 434(f)(3)(A)(i); *see also McConnell*, 540 U.S. at 194. Montana applies its disclaimer requirement, however, to all "printed election material" that includes information about a candidate's voting record. MCA § 13-35-225(3)(a). It defines

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-67-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

"printed election material" as including "[a]ll communications . . . through any broadcasting station, newspaper, magazine, outdoor advertising facility, direct mailing, poster, handbill, bumper sticker, internet website, or other form of general political advertising[.]" MCA § 13-35-225(1). And it does not limit its disclaimer requirement to those communications near-in-time to the election, but applies it to *all* printed communications regardless of when they are published.

Montana's disclaimer requirement reaches more speech than electioneering communications as defined in FECA in three ways. First, it reaches speech in media besides FECA's "broadcast, cable, or satellite." Second, it is not limited to speech occurring within 60 days of a general election or 30 days of a primary, as FECA requires. And third, there is no requirement that the speech be directed to the relevant electorate. Thus, Montana seeks to regulate all communications that "appeal to vote" and refer to a candidate for office and his or her previous votes, without consideration of when the communication is made, in what medium the communication is made, or to whom the communication is directed. In contrast, the Supreme Court ruled that the "appeal to vote" test survived vagueness concerns only when applied to communications that are disseminated by certain means (cable, broadcast, and satellite), refer to a clearly identified candidate for federal office, are disseminated within certain time periods before an election (60

1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-68-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

days before a general or special election or 30 days before a primary election or convention), and are directed toward the relevant electorate. The Supreme Court indicated that these bright-line requirements were a necessary part of the holding that the functional equivalent of express advocacy's appeal-to-vote test was not vague. *WRTL-II*, 551 U.S. at 474 n. 7.

Another federal district court recently held the appeal-to-vote test vague when it applied more broadly than to electioneering communications as defined in FECA. *Center for Individual Freedom v. Tennant*, Slip Copy, 2011 WL 2912735 (S.D.W.Va. July 18, 2011). *Center for Individual Freedom* concerned a challenge to West Virginia's express advocacy definition. *Id*. at *18. The court found that West Virginia used the appeal-to-vote test, in addition to *Buckley*'s "magic words" test, to define express advocacy. *Id*. at *20. But "express advocacy" encompasses more speech than electioneering communications as defined in FECA. *Id*. The court concluded that "a stand-alone 'appeal to vote' test [divorced from FECA's definition of electioneering communications] cannot survive a vagueness challenge." *Id*. at *21. The court explained that "West Virginia's use of the 'appeal to vote' test contains none of the objective, clearly-discernable elements that *WRTL II* emphasized in footnote 7." *Id*. Rather, West Virginia "'puts the speaker . . . wholly at the mercy of the varied understanding of his hearers,' and will therefore

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-69-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

muddle the scope of attendant regulation." *Id*. (*quoting Buckley*, 424 U.S. at 43).
Consequently, the court found the law unconstitutionally vague.

The same is true here. Montana, like West Virginia, has a "stand alone"
appeal-to-vote test. It is not grounded in the electioneering communication
definition as required by *WRTL-II*, but applies much more broadly. It "puts the
speaker . . . wholly at the mercy of the varied understanding of his hearers," *id*.,
who must determine whether a given statement is an "appeal to vote." Because
Montana applies to the appeal-to-vote test to more speech than electioneering
communications as defined in FECA, it is vague.

### 2.     Montana's Disclaimer Requirement Is an Impermissible Prior Restraint on Speech.

Montana's disclaimer requirement compells those who want to discuss a
candidate and his or her vote on a particular issue in a printed communication to
include a statement identifying the vote on which the statement is based, *as well as*
"a disclosure of contrasting votes known to have been made by the candidate on
the same issue if closely related in time." MCA § 13-35-225(3)(a). This "affirma-
tive duty to research in order to speak" functions as a prior restraint on speech.

"In its simple, most blatant form, a prior restraint is a law which requires
submission of speech to an official who may grant or deny permission to utter or

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-70-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

publish it based upon its contents." *Alexander v. U.S.*, 509 U.S. 544, 566 (1993)

(Kennedy, J., dissenting). *See also Southeastern Promotions, Ltd. v. Conrad*, 420

U.S. 546, 554 (1975) (identifying the "elements" of traditional prior restraints).

However, when Government imposes duties that speakers must comply with in

order to be allowed to lawfully engage in speech, prior restraint occurs just as

surely as if the speaker has to seek Government's permission before speaking. The

*Citizens United* Court pointed to the difficulties created for would-be speakers by

the complexity of the Federal Election Commission's regulatory scheme as an

example of this type of prior restraint. 130 S.Ct. at 895. As the Court explained,

federal law did not mandate that speakers seek and receive an advisory opinion

from the FEC prior to speaking. *Id*. Still, because of the complexity of the regula-

tory scheme, speakers could only speak with assurance that their speech was

lawful by first seeking an advisory opinion. *Id*. Though "not [] a prior restraint on

speech in the strict sense of that term," the practical effect was the same. *Id*.

Speakers who wanted to "avoid threats of criminal liability and the heavy costs of

defending against FEC enforcement must ask a governmental agency for prior

permission to speak." *Id*.

Montana's disclaimer requirement imposes a similar prior restraint. While

the law does not require those wishing to speak about candidates' voting records

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-71-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

to seek an advisory opinion first, the practical effect of the law is that those wishing to speak must do so or face the threat of sanctions. The disclaimer requirement requires those who want to publish a printed communication that talks about (or even mentions) a candidate's vote on a particular issue to research whether the candidate has voted on that issue previously, and how the candidate voted. The one who wants to speak must also research the effect of previous votes in order to determine whether the vote is truly one that contrasts with the vote the speaker wants to talk about, since speakers must identify all "contrasting votes." If they are unwilling (or unable) to expend the expense, time, and effort to perform this research, they must seek an advisory opinion or risk violating the law. Even if they do perform the research, speakers still run the risk that they will violate the law by failing to identify votes that the Commissioner will judge to be "contrasting" and "closely related in time." *See* MCA § 13-35-225(3)(a). In order to speak with assurance, speakers must request an advisory opinion—whether they are willing and able to do their own legislative research or not. As in *Citizens United*, this constitutes a prior restraint on speech.

Prior restraints on speech are presumptively invalid. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021-23 (9th Cir. 2009). Montana seeks to

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-72-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

skirt this presumption by framing its law not as a prior restraint but as a punishment for those engaging in unacceptable speech. The reality, though, remains: those wishing to publish printed communications about candidates' votes lawfully must first engage in extensive research regarding those candidates' previous votes, and determine the precise meaning of those votes so they may satisfy the disclaimer requirement. And even then they cannot speak with assurance that their speech is lawful without first submitting their speech to the Commissioner for an advisory opinion as to whether it satisfies the disclaimer requirement. As the Supreme Court reiterated in *WRTL-II*, "'[t]he freedom of speech . . . guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern *without previous restraint or fear of subsequent punishment*.'" 551 U.S. at 469 (*quoting Bellotti*, 435 U.S. at 776) (emphasis added). The disclaimer requirement does not allow this. It is therefore unconstitutional.

### 3. Montana's Disclaimer Requirement Fails the Required Strict Scrutiny Review.

Even if Montana's disclaimer requirement were not vague nor a prior restraint, it would still be unconstitutional because it is a content-based regulation of speech that cannot satisfy the required strict scrutiny review. *See ACLU v.*

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-73-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*Heller*, 378 F.3d 979 (9th Cir. 2004).

> **a.    The Disclaimer Requirement is a Content-Based Restriction on Speech With Heavy Burdens.**

The Ninth Circuit's *Heller* decision is instructive for evaluating content-based restrictions on speech. *Heller* concerned a challenge to a Nevada disclaimer requirement that required those "publishing 'any material or information relating to an election, candidate or any question on a ballot' to reveal *on the publication* the names and addresses of the publications' financial sponsors." *Id*. at 981 (emphasis in original). The Ninth Circuit recognized that this regulation went "beyond requiring the reporting of funds used to finance speech to affect the *content of the communication itself*." *Id*. at 987 (emphasis in original). The Nevada disclaimer requirement proscribed political speech unless it conformed to the "prescribed criteria." *Id*. It was thus a content-based regulation of speech subject to strict scrutiny. *Id*. To satisfy such scrutiny, the regulation must be "narrowly tailored to serve an overriding state interest." *Id*. at 993. And regulations will only survive strict scrutiny when they "use the least restrictive means to further the articulated interest." *Id*. (*quoting Foti*, 146 F.3d at 636). Applying this scrutiny, the court held Nevada's disclaimer requirement unconstitutional. *Id*. at 1002.

Montana's disclaimer requirement is worse than Nevada's. Not only does it

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-74-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

require speakers to identify who paid for the speech,[13] it also requires those who

mention a candidate and include information about his or her voting record to

include a statement identifying the vote on which the statement is based, *as well as*

"a disclosure of contrasting votes known to have been made by the candidate on

the same issue if closely related in time." MCA § 13-35-225(3)(a). This require-

ment places a heavy burden on speech in at least three ways. First and most

obvious, it is a content-based restriction on speech. "If certain content appears on

the communication, it may be circulated; if the content is absent, the communica-

tion is illegal and may not be circulated." *Heller*, 378 F.3d at 992.

Second, it imposes an affirmative "duty to research" upon those who want

to speak about candidates' voting records. *See supra* Part I.E.2. Even if this is not

a prior restraint as the Plaintiffs believe, *see id*., it remains a burdensome duty to

research and investigate. The Supreme Court recognized, "[t]he First Amendment

does not permit laws that force speakers to retain a campaign finance attorney,

conduct demographic marketing research, or seek declaratory rulings before

discussing the most salient political issues of our day." *Citizens United*, 130 S.Ct.

at 889. Surely the First Amendment does not permit laws that force speakers to

---

[13]Because the Plaintiffs do not want to engage in anonymous speech, they
do not challenge the disclaimer requirement insofar as it requires speakers to
identify themselves.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-75-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

retain legislative research assistants before speaking, either.

Third, Montana's disclaimer requirement forces speakers who wish to criticize candidates' votes on particular issues to speak in favor of those same candidates if they have made previous, contrasting votes on the issue. And it likewise forces speakers who wish to applaud candidates' votes to criticize those candidates if they have made previous, contrasting votes. An example will be helpful. Suppose American Tradition Partnership wishes to criticize a candidate's 2011 vote for an environmental policy that, in American Tradition Partnership's opinion, mismanages natural resources. Further suppose that same candidate had previously voted in 2010 against that same policy that she now in 2011 voted to enact. American Tradition Partnership would want the focus of its printed communication to be the fact that the candidate voted in favor of what it believes is a bad law. But the disclaimer requirement does not allow American Tradition Partnership to choose its message. Rather, it compels American Tradition Partnership to include a disclaimer alerting the public to the fact that the candidate has also previously voted against the bad law. The message the public receives is not the message that the speaker desires.

"The fundamental rule of protection under the First Amendment [is] that a speaker has the autonomy to choose the content of his own message." *Hurley v.*

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-76-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 573 (1995). Consequently, the Supreme Court has repeatedly ruled that speakers cannot be forced to communicate a message they do not want to communicate. For instance, in *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974), the Court ruled that newspapers making negative statements about candidates or their records cannot be forced to provide equal space for others' positive statements about the same candidates. In so holding the Court explained that the constitutional infirmity with such "equal space" laws arises from the fact that "the newspaper's expression of a particular viewpoint triggered an obligation to permit other speakers, with whom the newspaper disagreed, to use the newspaper's facilities to spread their own message." *Id*. at 257. Similarly, in *Hurley*, 515 U.S. 557, the Supreme Court ruled that it is unconstitutional to force a parade to include participants whose message would alter the message the parade organizers wished to convey. And in *Pacific Gas & Electric Company*, 475 U.S. 1 (1986), the Court struck a requirement that public utilities include in their billing envelopes the views of public interest groups, many of which were opposed to the utilities' views. Generally speaking, Government may not force speakers to say what they do not want to. "[T]his general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, *but*

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-77-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*equally to statements of fact the speaker would rather avoid*." *Hurley*, 515 U.S. at 573 (emphasis added).

The disclaimer requirement does just what *Hurley* said is impermissible—it forces speakers to include statements of fact about the prior votes of candidates that the speakers would rather avoid. It also forces speakers to include speech supportive of their political opponents in violation of *Pacific Gas*. As that Court recognized, compelling one to speak for one's political opponent "both penalizes the expression of particular points of view and forces speakers to alter their speech to conform with an agenda they do not set." *Pacific Gas*, 475 U.S. at 9. And just like in *Miami Herald*, when speakers express an opinion about a candidate's voting record, they trigger an obligation to use their printed material—purchased by them—to provide an additional message about the candidate that they do not want to disseminate.

### b.   The Disclaimer Requirement Fails Scrutiny.

Because the disclaimer requirement is a content-based speech restriction, allowing only that speech that conforms to the State's preferred content, it is subject to strict scrutiny. *Heller*, 378 F.3d at 987 and 993. But none of the recognized interests in disclosure justify Montana's disclaimer requirement. It is therefore unconstitutional.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-78-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

The seminal case for electioneering disclosure is *Buckley*, 424 U.S. 1. That Court found three compelling interests that may support disclosure requirements, *id*. at 66-68, none of which are sufficient to support the disclaimer requirement. First, *Buckley* identified an informational interest in informing voters about the sources of political campaign money and how candidates spend it. *Id*. at 66. Second, *Buckley* identified an anti-corruption interest in disclosure, recognizing that "disclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity." *Id*. at 67. And third, *Buckley* identified an enforcement interest in disclosure, noting that "recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of . . . contribution limitations[.]" *Id*. at 67-68.

None of these interests support the disclaimer requirement. The informational interest is inapplicable because it only supports disclosure of "the identity of persons financially supporting or opposing a candidate or ballot proposition." *Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021, 1032 (9th Cir. 2009); *see also Buckley*, 424 U.S. at 66 (tying the informational interest to the sources of campaign funding and how candidates spend it). The Plaintiffs have not challenged the disclaimer requirement's command that printed material identify

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-79-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

who paid for it, and the part they have challenged has nothing to do with campaign funding. The anticorruption interest is inapplicable for the same reason: it only supports disclosure of large contributions to campaigns. And the enforcement interest is likewise inapplicable because it only supports recordkeeping necessary to detect violations of contribution limits.

In short, there is no interest in compelling speakers to submit to the disclaimer requirement. It therefore must fail scrutiny and so is unconstitutional.

## F.     Montana's False Statement Law Is Unconstitutional.

Montana law also makes it "unlawful for a person to misrepresent a candidate's public voting record or any other matter that is relevant to the issues of the campaign with knowledge that the assertion is false or with a reckless disregard of whether or not the assertion is false." MCA § 13-37-131(1). It is also unlawful for anyone to misrepresent a candidate's voting record to another candidate. MCA § 13-37-131(2). This false statement law is both vague and overbroad and so is facially unconstitutional. In addition, it is a content-based restriction on speech that fails strict scrutiny review. It is also unconstitutional as applied to lobbyists taking positions taking positions on political issues and publishing their opinion concerning elected officials and their votes.

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-80-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

1.      **The False Statement Law is Void for Vagueness.**

Vague laws are facially unconstitutional. *See supra* Part I.E.1. Montana makes it unlawful for a person to misrepresent candidates' voting records or "any other matter that is relevant to the issues of the campaign." MCA § 13-37-131(1) and (2). Yet the law does not define what matters are "relevant to the issues of the campaign." Is it restricted to statements about the candidates' prior and current government service? Or does it also include statements about such things as candidates' academic backgrounds? Their spouses? Their current or past employment? Their spending habits?

Are all of these things "relevant to the issues of the campaign," or only some of them? No one knows. This uncertainty leaves those wishing to speak about candidates uncertain whether what they want to say will be judged to fall within the false statement law's prohibition. It also renders the false statement law subject to all the constitutional infirmities inherent in vague laws. *See supra* Part I.E.1. "The use of so indefinite a phrase . . . fails to clearly mark the boundary between permissible and impermissible speech." *Buckley*, 424 U.S. at 41 (holding "relative to" a candidate unconstitutionally vague without a limiting construction). The false statement law is void for vagueness and so facially unconstitutional.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-81-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

## 2.     The False Statement Law is Overbroad.

The United States Supreme Court established the overbreadth doctrine "out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Hicks*, 539 U.S. at 119 (2003). The overbreadth doctrine recognizes that "[m]any persons rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech" harming society as a whole. *Id*.

In non-First Amendment cases, litigants asserting an overbreadth challenge must show that the law is unconstitutional in all, or at least most, of its applications. *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). However, in the First Amendment context, courts will strike a law as overbroad when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008). *See also Pest Committee v. Miller*, 626 F.3d 1097, 1110 (9th Cir. 2010) (same). This lowering of the usual overbreadth standard is necessary in the First Amendment context because of the risk that "enforcement of an overbroad law" may "deter[ ] people from engaging in constitutionally protected

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-82-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

speech" and so may "inhibit[ ] the free exchange of ideas." *U.S. v. Stevens*, 130

S.Ct. 1577, 1594 (2010) (*quoting U.S. v. Williams*, 553 U.S. 285, 292 (2008)

(Alito, J., dissenting).

Plaintiffs are not required to risk prosecution under challenged statutes to

assert their First Amendment rights. Rather, "'self-censorship'" is recognized as

"'a harm that can be realized even without an actual prosecution.'" *Human Life of*

*Washington v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (*quoting Virginia v.*

*Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). Such self-censorship is a

"constitutionally sufficient injury" providing standing to challenge statutes

restricting speech. *Human Life of Washington*, 634 F.3d at 1001.

American Tradition Partnership, MRTLA PAC, and SGCCI recognize that

others may disagree with the positions they take on political issues and the

opinions they publish regarding candidates, the meaning of candidates' voting

records, and other issues relating to candidates. They therefore reasonably believe

that their communications could be judged to be a misrepresentation of a candi-

date's public voting record, or some other matter that is relevant to the issues of

the campaign, and so may subject them to investigation and civil action brought by

the Commissioner of Political Practices or a county attorney.

American Tradition Partnership and MRTLA PAC plan to continue publish-

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-83-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

ing their opinions anyway. SGCCI, however, has decided to self-censor its speech by refraining from publishing any more statements about candidates. It has faced the threat of an enforcement action against it and its members because of a previous communication it published that a candidate did not like. SGCCI has decided that it will not publish any additional opinions about candidates, their voting records, or anything else that it believes might be judged to be "relevant to the issues of a campaign" so long as the false statement law remains in effect. SGCCI does not want to take the risk that its communications will be judged to run afoul of the false statement law, nor subject itself and its members to the possible penalties that can be imposed by the law. SGCCI would continue to publish its carefully researched and well-reasoned opinions on candidates and their voting records, as well as other issues concerning candidates,  but for the false statement law and the penalties it imposes.

In *Buckley*, the Supreme Court ruled that political speech may only be restricted if it "expressly advocates the election or defeat of a clearly identified candidate[]" and so is "unambiguously related to the campaign of a particular [] candidate." *Buckley*,424 U.S. at 80. This "unambiguously campaign related" principle was necessary to ensure that restrictions on speech did not impermissibly reach issue advocacy, which would render the restrictions overbroad. *Id*. The

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-84-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*McConnell* Court, when considering the regulation of electioneering communica-

tions as defined in FECA, subsequently rejected the idea that there is a "rigid

barrier" between issue advocacy and express advocacy. *McConnell*, 540 U.S. at

193. The Court recognized that some so-called issue advocacy could be designed

to influence the electorate to vote for, or against, particular candidates. *Id*. So the

*McConnell* Court approved the regulation of all electioneering communications

that either contain *Buckley*'s magic words of express advocacy, or are the "func-

tional equivalent of express advocacy." *Id*. at 206. In doing so, however, the Court

agreed that the restriction of pure issue advocacy (i.e., that which is not "the

functional equivalent of express advocacy") would lack constitutional justifica-

tion. *Id*. *See also id*. at 206 n.88. Thus, *McConnell* maintained the distinction

between genuine issue advocacy and speech that is unambiguously campaign

related. *See Heller*, 378 F.3d at 985 (*quoting Anderson v. Speer*, 356 F.3d 651,

664-65 (6th Cir. 2004) ("*McConnell* 'left intact the ability of courts to make

distinctions between express advocacy and issue advocacy, where such distinc-

tions are necessary to cure vagueness and overbreadth in statutes which regulate

more speech than that for which the legislature has established a significant

governmental interest.'").

    The distinction that *McConnell* drew between genuine issue advocacy on

Bᴏᴘᴘ, Cᴏʟᴇsᴏɴ & Bᴏsᴛʀᴏᴍ
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-85-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

one hand, and express advocacy and its functional equivalent on the other, was affirmed by the *WRTL-II* Court. It held that only express advocacy and its functional equivalent (as determined by the appeal-to-vote test) may constitutionally be restricted. *WRTL-II*, 551 U.S. at 469-70 and 476. Genuine issue ads cannot be restricted without violating the Constitution. *Id*. at 481.

In *Citizens United*, the Court recognized that Government may require disclosure of the funding of issue advocacy speech (so long as the disclosure requirements passed applicable scrutiny). *Citizens United*, 130 S.Ct. at 915. However, the *Citizens United* Court explicitly stated that its holding applied only in the disclosure context. *Id*. It also explicitly affirmed that *WRTL-II* limited restrictions on speech to "express advocacy and its functional equivalent." *Id*.

*Buckley*'s holding, that speech that is not unambiguously campaign related may not be restricted, remains good law. As the *WRTL-II* Court explained, there is no "compelling interest in regulating ads . . . that are neither express advocacy nor its functional equivalent." *Id*. at 476. *Compare also id*. at 478-79 (the anticorruption interest cannot justify restricting issue ads) *with Citizens United*, 130 S.Ct. at 901-12 (the quid-pro-quo anticorruption interest is the only constitutionally cognizable interest in restricting speech). So if speech is not express advocacy nor its functional equivalent it may not be restricted or regulated, other

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-86-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

than requiring disclosure of its financial sponsors. *Citizens United*, 130 S.Ct. at 915. *See also Human Life of Washington*, 624 F.3d at 1017 (recognizing that under Supreme Court precedent, disclosure regulations may be imposed on issue advocacy while speech restrictions may not be); *Heller*, 378 F.3d at 985 (recognizing that restrictions on speech that reach issue advocacy suffer from overbreadth); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1097 (9th Cir. 2003) (courts must strike all restrictions on issue advocacy communications).

The applicability of Montana's false statement law is not limited to express advocacy communications. Rather, it applies equally to issue advocacy communications. Indeed, the regulation makes it unlawful to misrepresent "a candidate's public voting record or any other matter that is relevant to the issues of the campaign," regardless of the type of speech. The false statement law thus regulates more speech than constitutionally permissible. It is therefore overbroad and so facially unconstitutional.

### 3. The False Statement Law Is a Content-Based Restriction on Speech That Fails Strict Scrutiny Review.

False statement laws, like Montana's, are troubling because they put Government in the "position of being the arbiter of truth about political speech." *281 Care Committee v. Arneson*, 638 F.3d 621, 635-36 (8th Cir. 2011). But this is

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-87-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

constitutionally problematic because, as the Ninth Circuit reminds us, "[i]n this field every person must be his own watchman for the truth, because the forefathers did not trust any government to separate the true from the false for us." *U.S. v. Alvarez*, 638 F.3d 666, 674 (9th Cir. 2011) ("*Alvarez-II*") (Kozinski, Chief Judge, concurring in the denial of rehearing en banc) (*quoting Meyer v. Grant*, 486 U.S. 414, 419 (1988)). The First Amendment "constrain[s] the collective authority of temporary political majorities to exercise their power by determining for everyone what is true and false, as well as what is right and wrong." *281 Care Committee*, 638 F.3d at 636 (internal quotation and citation omitted). *See also Rickert v. State*, 168 P.3d 826, 827 (Wash. 2007) ("[t]he notion that the government, rather than the people, may be the final arbiter of truth in political debate is fundamentally at odds with the First Amendment.").

In *Rickert*, the Washington Supreme Court reviewed a cause of action filed by the Public Disclosure Commission against a political candidate who, allegedly, sponsored "[p]olitical advertising or an electioneering communication that contain[ed] a false statement of material fact about a candidate for public office" in violation of Washington statute. *Id*. The court observed that "'[t]he very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind.'" *Id*. at 845 (*quoting Meyer*, 486 U.S. at 419).

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-88-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

Thus, "[t]he notion that [such] a censorship scheme [ ] may be constitutionally enforced by a government agency erroneously presupposes that the State possesses an independent right to determine truth and falsity in political debate." *Id.* at 845 (internal quotations omitted).

Likewise, in *In Re Gableman*, 784 N.W.2d 631 (Wis. 2010), three Wisconsin Supreme Court justices on an equally-divided court observed that "[t]ime and again the United States Supreme Court has held that regulations authorizing the government to restrain or suppress speech and to prosecute violations of government imposed regulations restraining speech are disfavored due to the protections accorded by the First Amendment." *Id*. at 636 (*citing Thomas v. Collins*, 323 U.S. 516 (1945); *Buckley*, 424 U.S. 1; *WRTL-II*., 551 U.S. 449).

False statements simply cannot be proscribed without endangering First Amendment freedoms. As the Ninth Circuit recognized in *Alvarez-II*, the "erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they need to survive." *Alvarez-II*, 638 F.3d at 668 (M. Smith, Circuit Judge, concurring in the denial of rehearing en banc) (*quoting New York Times v. Sullivan*, 376 U.S. 254, 273, 271 (1964) (*quoting Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940)). If "all untruthful speech is unprotected, . . . . we would have to censor our speech to

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-89-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

avoid the risk of prosecution for saying something that turns out to be false."
*Alvarez-II*, 638 F.3d at 675 (Kozinski, Chief Judge, concurring in the denial of
rehearing en banc).

Thankfully "[t]he First Amendment does not tolerate giving the government
such power." *Id*. The Ninth Circuit explains that the fact that speech might be
false, or even a deliberate lie, does not remove it from the protection of the First
Amendment. *U.S. v. Alvarez*, 617 F.3d 1198, 1200 (9th Cir. 2010) ("*Alvarez-I*"),
*reh'g denied*, 638 F.3d 666 (9th Cir. 2011) ("*Alvarez-II*"). Rather, "[i]t has long
been clear that First Amendment protection does not hinge on the truth of the
matter expressed." *Alvarez-I*, 617 F.3d at 1203. *Accord 281 Care Committee*, 638
F.3d at 633-34 ("We find that the Supreme Court has never placed knowingly
false campaign speech categorically outside the protection of the First Amendment
and we will not do so today."). As the Supreme Court has explained, "The First
Amendment is a value-free provision whose protection is not dependent on the
truth, popularity or social utility of the ideas and beliefs which are offered."
*Meyer*, 486 U.S. at 419.

In fact, it is only a few "narrow categories of false speech" that are "beyond
the First Amendment's protective sweep." *Alvarez-I*, 617 F.3d at 1203. Proscrip-
tions of false speech that do not fit within one of those narrow categories are

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-90-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

content-based speech regulations and are unconstitutional unless they survive strict scrutiny review. *Id*. *Accord 281 Care Committee*, 638 F.3d at 636. Montana's false speech law does not fit within one of those categories, *see infra* Part I.F.3.a, and does not survive strict scrutiny review, *see infra* Part I.F.3.b. It is therefore unconstitutional.

### a. The Speech Proscribed by the False Statement Law Is Protected By the First Amendment.

As the Ninth Circuit explained in *Alvarez-I*, certain narrow categories of speech have historically been recognized as outside the First Amendment's protection.

> "From 1791 to the present," ... the First Amendment has "permitted restrictions upon the content of speech in a few limited areas," and has never "include[d] a freedom to disregard these traditional limitations." These "historic and traditional categories long familiar to the bar[ ]" [ ] includ[e] obscenity, defamation, fraud, incitement, and speech integral to criminal conduct . . . .

*Alvarez-I*, 617 F.3d at 1202 (*quoting U.S. v. Stevens*, 130 S.Ct. at 1584 (internal citations omitted). The Ninth Circuit explicitly ruled that false factual speech is not an unprotected category of speech. *Id*. at 1206. *Accord 281 Care Committee*, 638 F.3d at 633-34. As the *Alvarez-II* court further clarified, "the Court's standard list of categorically exempt speech has never used the phrase 'false statements of fact.'" *Alvarez-II*, 638 F.3d at 670 (M. Smith, Circuit Judge, concurring in the

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

-91-

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

denial of rehearing en banc). Rather, "the Court has limited itself to using the words defamation (or libel) and fraud." *Id*.

Thus, unless the false statement law *only* proscribes defamation or fraud, it reaches speech that enjoys First Amendment protection.

### 1)    The False Statement Law Proscribes More Than Defamation.

Every false statement is not defamation. *Id*. at 1209; *accord 281 Care Committee*, 638 F.3d at 634-35. Rather, to be defamation and thus excluded from First Amendment protection, speech must be not only false but also "injurious to an individual." *Alvarez-I*, 617 F.3d at 1209. Montana's false statement law, however, does not proscribe only false speech about candidates that is harmful to the candidates. It proscribes *all* false speech about candidates. MCA § 13-37-131. And it does not include a requirement that the State prove that the speech in question harmed anyone before imposing penalties against the speaker. *Id*.

Montana's false statement law thus does not proscribe only that speech that fits within the narrow category of defamation. *See Alvarez-I*, 617 F.3d at 1209-11. Consequently, "the Act is not sufficiently analogous to an antidefamation law to bring it within the scope of the historical First Amendment exception for laws punishing defamation." *Id*. at 1211.

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-92-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

### 2) The False Statement Law Proscribes More Than Fraud.

Nor does Montana's false statement law proscribe only that speech that is fraudulent. Like defamation, fraud requires more than that a statement is false. As the Ninth Circuit explained, to rise to the level of fraud "here must be proof the false statement was (1) knowing and intended to mislead, (2) material, and (3) did mislead." *Id*. at 1212 (*citing Ill. ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 620 (2003)). And the State bears the burden of proof for each of these elements. *Id*. at 1211. Without proof of each of these elements, speech is not fraudulent. *Id. Accord 281 Care Committee*, 638 F.3d at 635 n.2.

Montana's false statement law does not proscribe only that false speech about candidates that is uttered with the intent to mislead, and actually does mislead, hearers. Instead, it proscribes all false speech about candidates. MCA § 13-37-131. Montana's false statement law thus does not proscribe only that speech that fits within the narrow category of fraud. *See Alvarez-I*, 617 F.3d at 1211-13.

### b. The False Statement Law Fails Strict Scrutiny Review.

As the Ninth Circuit emphatically declared, "the right to speak and write whatever one chooses—including, to some degree, worthless, offensive, and demonstrable untruths—without cowering in fear of a powerful government is, in

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-93-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

our view, an essential component of the protection afforded by the First Amend-

ment." *Alvarez-I*, 617 F.3d at 1205. Because Montana's false statement law

proscribes speech that does not fit within one of the narrow categories outside

First Amendment protection, and it is a content-based restriction on speech, it

must survive strict scrutiny or be declared unconstitutional. *Id.* at 1202; *id.* at

1215; *Alvarez-II*, 638 F.3d at 667; *accord 281 Care Committee*, 638 F.3d at 636.

Under strict scrutiny review, "the government must show that the law is narrowly

tailored to achieve a compelling governmental interest." *Alvarez-I*, 617 F.3d at

1216. Additionally, "A law is not narrowly tailored when less speech-restrictive

means exist to achieve the interest." *Id.*

Under *Alvarez-I* and Supreme Court precedent, Montana's false statement

law must fail scrutiny. Even if the State has a compelling interest in an electorate

that is well-informed about candidates and the issues, the false statement law is

not narrowly tailored to that interest. It fails scrutiny for at least two reasons.

First, it prohibits speech for greater periods of time than what is necessary to

accomplish the State's interest. "The preferred First Amendment remedy" is

always "more speech, not enforced silence[.]" *Id.* (*quoting Brown v. Hartlage*, 456

U.S. 45, 61 (1982)). The Ninth Circuit explained how this principle must work: "If

there be time to expose through discussion the falsehood and fallacies, to avert the

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-94-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

evil by the processes of education, the remedy to be applied is more speech, not enforced silence." *Alvarez-I*, 617 F.3d at 1217 (*quoting Texas v. Johnson*, 491 U.S. 397, 419 (1989) (*quoting Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)). Montana has proscribed false speech about candidates' voting records or any other matter that is relevant to the issues of the campaign, regardless of when the speech is uttered. It might be true that there is no "time to expose [false speech] through discussion" when the speech is made the night before the election. But certainly there is time to expose false speech when the speech is made well in advance of the election. Yet Montana proscribes speech no matter when it is made. In doing so, it proscribes more speech than necessary to accomplish its interest in a well-informed electorate. The false statement law thus cannot satisfy strict scrutiny because "less speech-restrictive means exist to achieve the interest." *Alvarez-I*, 617 F.3d at 1216.

In addition, the false statement law proscribes speech regardless of whether it actually misleads anyone. The Supreme Court has recognized that "rhetorical hyperbole . . . has traditionally added much to the discourse of our Nation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Indeed, "exaggeration and nonliteral commentary have become an integral part of social discourse." *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir.2005). Consequently, "[t]he First Amend-

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-95-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

ment protects statements that cannot reasonably [be] interpreted as stating actual facts about an individual." *Id*. This follows from the Supreme Court's rule that speech about a public figure is not defamatory when it "could not reasonably have been interpreted as stating actual facts about the public figure involved." *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988).

Montana's false statement law does not just proscribe that speech that is actually capable of misleading its audience. Rather, it proscribes all misrepresentations about candidates, their voting records, and all other matters that are relevant to the issues of the campaign. MCA § 13-37-131(1), (2). This ban reaches even statements that "could not reasonably have been interpreted as stating actual facts about the public figure involved." *See Hustler Magazine*, 485 U.S. at 50. In proscribing speech that could not reasonably mislead anyone, Montana bans more speech than necessary to accomplish its interest in a well-informed electorate. The false statement law thus cannot satisfy strict scrutiny because "less speech-restrictive means exist to achieve the interest." *Alvarez-I*, 617 F.3d at 1216.

Because the false statement law cannot satisfy the required strict scrutiny review, it is unconstitutional under the First Amendment.

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-96-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

### 4.    The False Statement Law Is Unconstitutional as Applied to Lobbyists Taking Positions on Political Issues.

Even if the False Statement Law is constitutional on its face and survives scrutiny, it is still unconstitutional as applied to the political speech of lobbyists such as the proposed advertisements by American Tradition Partnership and MRTLA PAC, which express opinions on political issues.

Lobbyists like American Tradition Partnership, MRTLA PAC, and SGCCI serve a key function in informing the public about new and pending legislation and its ramifications. They also, through issue advocacy and direct political activity, seek to influence legislators. After review of the issue before them, lobbyists state their opinions publicly to achieve both of those goals. Such opinions are constitutionally protected under the First Amendment: "A statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich*, 497 U.S. at 20. Any "[c]riticism of [public officer's] official conduct does not lose its constitutional protection merely because it is effective criticism and hence diminishes their official reputations." *New York Times*, 376 U.S. at 273. Indeed,

> imposing liability for erroneous reports of the political conduct of officials reflect the obsolete doctrine that the governed must not criticize their governors. . . . The protection of the public requires not merely discussion, but information. Political conduct and views which some

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-97-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

respectable people approve, and others condemn, are constantly imputed to Congressmen.

*Id*. at 272 (citations omitted). The false statement law subjects lobbyists to accusations that their carefully-researched, publicly-disseminated opinions are false, to depositions to prove that their opinions are true, and to penalties if the government disagrees. This it cannot do. The false statement law contravenes the First Amendment as applied to lobbyists like American Tradition Partnership and MRTLA PAC expressing their opinions on political issues.

## II. The Plaintiffs Will Suffer Irreparable Harm.

The irreparable harm standard for preliminary injunctions is satisfied where, as here, First Amendment freedoms are impermissibly burdened. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Yahoo!, Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1234 (9th Cir. 2006) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The risk of irreparable harm is magnified when *political* speech and association are suppressed. "[T]iming is of the essence in politics . . . . [W]hen an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all." *N.A.A.C.P., Western Region v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984) (*quoting Shuttlesworth v. City*

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-98-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

*of Birmingham*, 394 U.S. 147, 163 (1969) (Harlan, J., concurring)). "A delay 'of even a day or two' may be intolerable when applied to 'political speech in which the element of timeliness may be important.'" *N.A.A.C.P.*, 743 F.2d at 1356 (*quoting Carroll v. Commissioners of Princess Anne*, 393 U.S. 175, 182 (1968)).

Each plaintiff wants to engage in constitutionally protected political speech and association *right now*, and would do so, except the law prevents them. Because the plaintiffs have likely merits success, irreparable injury follows. *Sammartano*, 303 F.3d at 973-74 (9th Cir. 2002); *see also Brown v. Cal. Dept. of Transp.*, 321 F.3d 1217, 1226 (9th Cir. 2003) (holding that when plaintiffs state a colorable First Amendment claim, the risk of irreparable injury is to be presumed).

### III. The Balance of Hardship Favors the Plaintiffs.

"[T]he fact that a case raises serious First Amendment questions ***compels*** a finding that ... the balance of hardships tips sharply in [the plaintiffs'] favor." *Sammartano*, 303 F.3d at 973 (internal quotations and citations omitted) (emphasis added). *See also Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (same). The only time balance of hardships should not be presumed to tip toward plaintiffs raising First Amendment questions is when the plaintiffs cannot establish likely merits success. *Paramount Land Co. LP v. California Pistachio Com'n*, 491 F.3d 1003, 1012 (9th Cir. 2007).

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-99-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

The City cannot claim it is harmed because an *unconstitutional* law is enjoined. *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004). Because the Plaintiffs have demonstrated likely merits success, the balance of hardships favors the Plaintiffs.

## IV. The Public Interest Favors An Injunction.

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Sammartano*, 303 F.3d at 974 (quoting with approval *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir.1994)). Indeed, "[c]ourts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Id*. So when plaintiffs demonstrate likely merits success on First Amendment claims, it is in the public interest to enjoin the offending statute. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

There is no interest in enforcing an unconstitutional law. *Heller*, 378 F.3d at 997. *See also KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (ruling that neither "the City nor the public" have "an interest in enforcing an unconstitutional law"); *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 854 (1st Cir. 1988) (same).

Because Plaintiffs have established a likelihood of success on the merits of

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-100-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo

their First Amendment claims, an injunction is in the public interest.

## Conclusion

As demonstrated above, the Plaintiffs are meet the requirements for preliminary injunctive relief. They are likely to succeed on the merits as to all their claims. They will suffer irreparable harm absent an injunction. The balance of hardships favors the Plaintiffs, and the public interest favors an injunction. This Court should therefore grant the Plaintiffs motion to preliminarily enjoin each of the challenged laws.

DATED:  September 7, 2011.

/s/ James E. Brown
Local Attorney for All Plaintiffs

## Local Rule 7.1(d)(2)(E) Word Verification Certification

This memorandum of law does *not* comply with Local Rule 7.1(d)(2)(A). It contains 21,710 words, as verified by the word count feature of WordPerfect X4, the word processor that created it.

The Plaintiffs have filed a motion to file an oversize brief. This brief has been attached as an exhibit to that motion, pursuant to the Clerk's Office's instructions to counsel.

Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

**-102-**

*Lair et al. v. Gallik et. al.*
Case No. _____

Pls.' Preliminary Injunction Memo